Bass *et al.*, *vs.* The Mayor and Council of the City of Columbus.

BASS *et al.*, *vs.* THE MAYOR AND COUNCIL OF THE CITY OF COLUMBUS.

1. The Legislature has the power to create corporations for the government of towns, and to enlarge or diminish their powers from time to time, at its discretion ; it may authorize the imposition of taxes to construct a railroad, beginning at the city and extending into the interior—either into the interior of Georgia or an adjacent State.

2. The Legislature, in 1858, passed an Act to make valid and binding the subscriptions theretofore made by the Mayor and Council of the City of Columbus to the stock of the Mobile and Girard Railroad Company, and to the stock of the Montgomery & West Point Railroad Company ; and to make valid and binding the bonds issued by the Mayor and Council to said company in payment of the same ; and to declare and make valid the Ordinances theretofore passed by said Mayor and Council, authorizing the collection of taxes for the payment of interest accruing on said bonds ; and to authorize the Mayor and Council of said city to levy and collect a tax annually, for the purpose of paying the principal and interest of said bonds ; and to authorize the collection of taxes for the payment of the principal and interest of all legal contracts which have been, or may thereafter be made by said corporation : *Held,* 1. That said Legislative Act gave validity to the previous proceedings of the city and its agents, whether they were otherwise valid or not. 2. That such Act was not inoperative as being retroactive, unjust or unconstitutional. 3. That the city was thereby empowered to levy and collect the taxes which they are now seeking to enforce.

Illegality, in Muscogee Superior Court. Decision by Judge WORRILL, at November Term, 1859.

A tax *fi. fa.* was issued by authority of the Mayor and Counsel of the City of Columbus, directed to the marshal of

said city, commanding him of the goods and chattels, lands and tenements of Bass & Cleghorn, of the Perry House, to levy and sell so much as would be sufficient to raise the sum of four hundred and seventeen dollars and fifty cents, being the amount of the corporation and railroad tax assessed against them for the year 1859, execution dated 15th April, 1859.

By virtue of said execution, the marshal levied upon city lots Nos. 219, 220, 221, and 222, situated on Bryan and Oglethorpe streets, said lots known as the premises on which the Perry House is situated; also, on lots 227, 228, 229, and 230, on which is situated the Oglethorpe House.

To this levy Bass & Cleghorn filed an affidavit of illegality, on the following grounds, to-wit:

1st. That a tax is levied for the purpose of paying bonds issued by the Mayor and Council of the City of Columbus for the building of the Mobile & Girard Railroad, and said Council had no authority to levy such a tax according to law.

2d. That the Mayor and Council of the City of Columbus have no authority to levy and collect a tax to pay the bonds issued for stock for the purpose of building the Mobile & Girard Railroad, said railroad being without the limits of the State of Georgia, to-wit: in the State of Alabama; and that said tax *fi. fas.* are for this purpose.

3d. That said Mayor and Council of the City of Columbus have no authority to levy and collect a tax for the purpose of paying the bonds of said City Council, issued to the Montgomery & West Point Railroad Company—the said company being a foreign corporation, and without the limits of said State of Georgia, and without the limits of said City of Columbus; and that said tax *fi. fa.* is in part for said purpose.

4th. That said tax *fi. fa.* is issued for the purpose of collecting a tax to pay for stock, or bonds issued for stock, in the Mobile & Girard Railroad Company, corporation chartered and wholly existing in the State of Alabama, and that said tax *fi. fa.* is proceeding for said purpose without the authority of law.

5th. That said *fi. fa.* is illegal in this: That the citizens of the City of Columbus instructed said Mayor and Council to subscribe for stock in the Mobile & Girard Railroad, and

Bass *et al.*, *vs.* The Mayor and Council of the City of Columbus.

in the Montgomery & West Point Railroad, under a contract to be signed and executed by said companies, that they, nor either of them, should ever hereafter, by virtue of any power or authority which said company may obtain from either the Mayor and Council of the City of Columbus or the Legislature of the State of Georgia, ever to extend the track of said road beyond a certain point, or in any manner connect the track of said road within the corporate limits of said city, which was signed and executed before said subscriptions were made by said companies, and that said companies have violated said contract and agreement, by proceeding to connect said railroad, to the great and irreparable injury of affiants, without their consent, and against their protest—thus compelling affiants to pay money which brings certain ruin upon their property—contrary to law and contrary to said contract.

6th. That said *fi. fa.* is proceeding illegally in this: That in the year 1857, affiants paid this railroad tax, which, in the year 1858, the Supreme Court declared illegally collected; and affiants repeatedly, during the year 1858, both before and after said decision, offered and tendered the amount of taxes legally assessed against them, if said Mayor and Council would deduct the amount illegally collected of them in the year 1857, which said Mayor and Council refused to do.

7th. That said tax *fi. fa.* is proceeding illegally in this: That said *fi. fa.* is based upon an Act of the Legislature of Georgia, assented to on the 11th day of December, 1858, entitled " An Act to make valid and binding the subscriptions heretofore made by the Mayor and Council of the City of Columbus to certain railroad companies;" which affiants are advised and believe to be unconstitutional and void.

9th. That said tax *fi. fa.* is proceeding illegally in this: That the subscriptions of stock in the Mobile & Girard Railroad and in the Montgomery & West Point Railroad Companies, which said *fi. fa.* is levied to pay, was made under solemn covenant and agreement which have been violated; therefore said subscriptions are not binding upon the tax payee—so affiants are advised and believe.

10th. That said tax *fi. fa.* is proceeding illegally in this: That said Mayor and Council are indebted, and were from the last of the year 1857, to affiants a large sum of money, illegally collected for that year on railroad tax for the Mo-

bile & Girard Railroad which said Mayor and Council refused to allow as an offset to affiants, affiants offering to pay the balance at least twelve months previous to the issuing of said tax.

After argument, it appearing to the Court that the grounds stated in said affidavits of illegality are insufficient: It is therefore ordered that said *fi. fas.* do proceed.

To which decision counsel for Bass & Cleghorn excepted, and assigned the same as error.

THORNTON & THOMAS, BLANDFORD & CRAWFORD, for plaintiffs in error.

JOHN PEABODY, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

On the 11th of December, 1858, the Legislature passed an Act to make valid and binding the subscriptions theretofore made by the Mayor and Counsel of the City of Columbus to the stock of the Mobile & Girard Railroad Company, and to the stock of the Montgomery and West Point Railroad Company ; and to make valid and binding the bonds issued by the said Mayor and Council, to said companies in payment of the same ; and to declare and make valid the ordinances theretofore passed by said Mayor and Council, authorizing the collection of taxes for the payment of interest accruing on said bonds; and to authorize the Mayor and Council of said city to levy and collect a tax annually for the purpose of paying the principal and interest on said bonds; and to authorize the collection of taxes for the payment of the principal and interest of all legal contracts which have been or may thereafter be made by said corporation.

And the Act reads, that, " Whereas, the Mayor and Council of the City of Columbus in public meeting assembled, have acknowledged the validity of the contracts made before that time, by which said bonds and coupons were issued, and have recognized the obligation which rests upon said corporation to pay the principal and interest of said bonds as the same may become due." *Pamphlet Acts of 1858, p.* 131.

It is apparent, then, that if the Act is valid and constitu-

tional, the plaintiffs in error have no case.   Is the Act valid and constitutional?

This case is important from the magnitude of the principle involved, and has received at our hands the most deliberate and patient investigation.   Did opportunity permit, it might not be unprofitable to examine the power of the State to create corporations, and the powers that may be extended to them.   We think, however, that the principles regulating and controlling the questions debated in this case, may be limited within a narrow range.

Corporations in Georgia exist only by statute; and it can only exercise those powers expressly granted and which result by necessary implication.   In this case there is no doubt of the amplitude of the grant.

Courts on the construction of charters never confine themselves to the letter, but whatever is necessary and proper to carry into execution the power conferred is always conceded.   Here the power attempted to be exercised is not implied; on the contrary, it is expressly given.

Corporate purposes have been divided into direct, such as police regulations, the construction of streets, supplying the town with water, etc.; and indirect, such as canal and railroad improvements, by which the commerce and business, and general improvement and prosperity of the place, is promoted.   And one of these objects is as legitimate as the other. Is there anything illegal or against common right for a town to engage in such enterprises?   With the lights of experience before us, it is useless to argue in favor of such a proposition; and if a majority of the community to be affected are desirous of doing this, and the Legislature will grant the power, upon what principle shall the few interfere and arrest such works?   Shall it require the *unanimous* consent of the inhabitants of a town before such power shall be exercised? It would annihilate the privilege.   And if a number less than the whole shall suffice, who but the Legislature shall decide upon the *plus* or the *minus?*   It has been wisely bestowed upon the majority.

But it is argued that these corporate powers, if not confined to the limits of the corporation, should certainly not be extended to corporations situate outside of the State.   Did not the State itself extend its own railroad beyond its own limits?   And why may not a municipal corporation do this,

in order to make the outlay profitable? What signifies it, whether a road beginning at the city of Columbus is extended into the interior of Alabama or Georgia? The only question is, which will bring the largest amount of trade and travel to the city of Columbus. Suppose the city, for the promotion of the health of the city, should determine to supply it with water, and the only supply was from the highlands on the other side of the Chattahoochee river, would there be anything immoral or illegal in making a contract for this purpose? The interest of the corporation is the only true test of the corporate character of the act. Suppose the Legislature were to authorize the city of Savannah to subscribe for stock to incorporate a company to establish a direct trade between Savannah and Liverpool, Canton or Calcutta, I am not prepared to say that such Act would be void.

The operations of the Mobile & Girard and Montgomery & West Point Railroads may be without the State even; the benefits are experienced within the city of Columbus. Suppose there was an obstruction in the Chattahoochee river which impeded its navigation and cut off the commerce of Columbus; and further, that the river lay within the limits of Alabama: might not the city by the authority of the Legislature raise, by taxation, a fund to remove the impediment? The *work* might be done beyond the limits of the State—the consequences or effects of it would be felt throughout the heart of Columbus, and in every ward of the city.

And who is the proper judge, whether any proposed measure will conduce to the public interest of the city? Not the Courts, surely, nor the majority of the people acting through their Representatives in General Assembly; but a majority of the corporation, acting under the sanction of the Legislature. The people of each community or municipality know what is best for them.

But it is said that the Act of 1858 is retroactive, and if not unconstitutional, is opposed to the principles of natural justice and free government, and is therefore void.

There is great difficulty in determining what are the principles of natural justice, and that which tends to undermine what theorists may suppose to be the fundamental principles of the social compact; and I am aware that it has been declared by Judges of Courts of the highest respectability, that retroactive provisions which take away or impair vested

rights, are inoperative. But then, on the other hand, there are not wanting the names of the most distinguished jurists and Courts of the highest authority, who deny to the judiciary any right to treat retrospective acts as void. *Calder vs. Bull*, 3 *Dallas*, 386; *Satterlee vs. Matthewson*, 2 *Peters*, 280; *Osborn vs. Huger*, 1 *Bay*, 179; *Fletcher vs. Peck*, 6 *Cramh*, 135; *King vs. Dedham, Burk*, 15, *Mass. Rep.*, 447; *Wales vs. Stetson*, 2 *Mass. Rep.*, 143; *Society for the Propagation of the Gospel vs. Wheeler*, 2 *Gallis*, 105; *Cochran vs. Van Surlay*, 20 *Wendell*, 365; *Senator Buplank's Opinion; Butler vs. Palmer*, 1 *Hill*, 324; *Charles River Bridge vs. Warren Bridge*, 11 *Peters*, 420; *American Jurist for October*, 1833, *p.* 277; *Allen vs. McKeen*, 10 *American Jurist*, 273 *to* 297; *Barrick vs. Smith*, 5 *Paige Ch. Rep.*, 157; 1 *Bl. Com. Christian's Notes*, 91.

In the present case, we must say that we see nothing in this Act so unjust or oppressive as to make it our duty to resort to this extreme, doubtful and dangerous power of pronouncing it void. Our cities all over the State and country have frequently contributed, in their corporate capacities, to roads, canals, and other improvements, without exciting alarm or being suspected of oppressing their communities, or of invading unjustly any salutary principle of the social system. And we cannot shut our eyes to the fact, that much of their prosperity depends upon the extent and facilities of their intercourse with the interior as well as with distant and foreign places. True, these schemes sometimes prove visionary, and thus bring loss upon the property holders. But that must always be a question for the corporation itself, and not for the Court. There the battle must be fought between the sanguine and hopeful on the one side, and the saturnine and contras on the other. Once decided by the majority, the minority must submit, provided the majority does not transcend its chartered powers. From the beginning of society to the present time, the warfare has waged incessantly between majorities and minorities as to their interests and their rights. The levying and collecting of taxes is always a compulsory act of the majority and generally very ungraciously submitted to by the minority. The present case is not unlike thousands that have preceded it, and there is nothing new under the sun.

But it is said, that if the proceedings of the Council were

void under the previous Act of 1857, they cannot be rendered effectual by a subsequent confirmatory Act of the Legislature. But there can be no difficulty in the present case. The city asks for legislative interference to give *validity* to its previous Acts, and not to perpetuate their *infirmity.* To comply with the wishes of the city was the object of the Legislature in passing the Act of 1858, not to defeat said wishes. The end of all confirmatory laws, so far as they are retroactive, is to give effect to acts which were before inoperative. Our Digests abound with statutes confirming the void acts, of public officers and others occupying some fiduciary relation and that such is the proper effect of such laws, was adjudged by the Supreme Court of the United States in the case of *Wilkinson vs. Leland,* 2 *Peters,* 662.

Believing, then, as we do, that the judiciary is not the guardian of the Legislature, and that it possesses no *veto* powers over its constitutional acts, we cannot disregard and thrust aside the Act of 1858, merely because it is retroactive in its purposes and effect.

As to the other minor questions made in the record, they were abandoned in the argument. Had they been insisted on, there is none of them entitled to receive our continuance and favor.

We affirm the judgment of the Circuit Court.