## CRAWFORD *v.* BROOMHEAD.

Prior to the passage of the act of November 11, 1889, relating to sales of the estates of wards for reinvestment (Acts 1889, pp. 156, 157), the ordinary had jurisdiction and authority to grant to a guardian of a minor child an order authorizing the guardian to sell unproductive real estate belonging to the ward, for the purpose of reinvesting the proceeds of the sale in other and productive property. The act of December 21, 1827 (Cobb's Dig. pp. 325, 326), in so far as it authorized the sale of realty belonging to an orphan or orphans, "where it is fully and

plainly made to appear that the same will be for the benefit of such orphan or orphans," was, until the passage of the act first above cited, still of force, the power of ordering such sales being in the ordinaries. Section 1828 of the code deals only with the rules and restrictions under which such sales are to be conducted.

December 21, 1895.

Equitable petition. Before Judge Lumpkin. Fulton superior court. March term, 1895.

*John C. Reed,* for plaintiffs. *Hall & Hammond, Ellis & Gray* and *Rosser & Carter,* for defendants.

SIMMONS, Chief Justice.

The only question for our determination in this case is, whether prior to the act of November 11, 1889, relating to sales of the estates of wards for reinvestment, the ordinary had jurisdiction and authority to grant to the guardian of a minor child an order authorizing the guardian to sell unproductive real estate for the purpose of reinvesting the proceeds of the sale in other and productive property. Prior to the act of 1827 (Cobb's Dig. 325, 326), there were several acts on the subject of sales by executors, administrators and guardians; and that act, after reciting in its preamble that by the prior acts referred to, no power was given "to said courts [the inferior courts when sitting for ordinary purposes, now the courts of ordinary] to order the sale of any real estate belonging to orphans other than such as is acquired by them from their testator or intestate, by reason of which frequent and manifest injury is sustained by orphans and others holding real estate other than such as is acquired by descent," provides that said courts "shall be authorized to order a sale of any part or the whole of the real estate of any orphan or orphans, . . . . upon application of the . . . guardian or guardians, where it is fully and plainly [made to] appear that the same will be for the benefit of such orphan or orphans, . . . . under the same rules and restrictions as are by law pointed

out for the sale of real estate of testators or intestates."
This act, construed with those of which it is amendatory,
clearly gave to the courts of ordinary the power to order
the sale of the real estate of orphans, whenever it should be
made to appear to the court that the sale would be for the
benefit of the orphan; and it was so well understood prior
to the code that this power was vested in the ordinary, that
the codifiers did not incorporate therein the details of, the
prior legislation on the subject, but embraced so much of it
as was deemed necessary in section 1828 of the code, which
declares that "all sales of any portion of the property of the
ward shall be made under the direction of the ordinary, and
under the same rules and restrictions as are prescribed for
sales by administrators of estates." This section, we think,
should be construed in connection with the act of 1827,
and so construing it, the ordinary had power thereunder to
order a sale of any portion of the property of the ward
whenever it should be made to appear that the sale would
be for the benefit of the ward.

It was contended that under this section the ordinary
could not order a sale of the realty of the ward for rein-
vestment, it being provided therein that all sales of the
property of the ward shall be made "under the same rules
and restrictions as are prescribed for sales by administrators
of estates," and the power of an administrator to sell realty
being confined to sales for the purpose of paying debts and
for distribution. We do not think the language quoted
limited the purposes for which sales of the property of the
ward could be made. This language appears for the first
time in the act of 1827, and in that act it applied to the
mode and manner of the sale. It applies to the application
for leave to sell, the advertisement, time of sale, etc. If it
limited the power of the ordinary to the granting of an
order of sale only where the sale was to be made for the
purpose of paying debts and for distribution, it would vir-
tually abrogate the acts upon which this section of the code

is predicated, and some other provisions of the code. For instance, under section 1824 the ordinary may in his discretion allow the *corpus* of the estate of the ward to be used in whole or in part for his maintenance and education. How could this be done if the contention of the plaintiff in error is correct? According to that contention the ordinary would have no power to authorize the guardian to sell unproductive realty of the ward for his maintenance and education, although the ward might be in a starving condition and illiterate. In the case of *Prine* v. *Mapp*, 80 *Ga.* 137, this court held that although it is the duty of a father to provide for the maintenance and education of his children until their majority, yet if he is unable to do so from his own means, but has in his hands as their guardian an estate belonging to them, the ordinary may lawfully grant an order to sell the property for that purpose. Other cases could be cited in which this court has upheld the power of the ordinary to authorize the sale of the property of a ward for other purposes than the payment of debts and distribution.

We are confirmed in this opinion, not only by the recognition of the power by this court in numerous instances, but by the uniform practice of the ordinaries in this respect up to the passage of the act of 1889. The writer, from an experience at the bar and on the bench of thirty-nine years, has never known it to be questioned before. His experience has been that applications for the sale of the property of wards, prior to the passage of the act of 1889, were uniformly made to the ordinary and passed upon by him. By the act of 1889 the legislature, in its wisdom, took away from the ordinary the power to grant orders for the sale of the property of wards for this purpose, and conferred it upon the judges of the superior courts, being doubtless of the opinion that the latter would exercise better judgment and discretion than had been exercised by some of the ordinaries in regard to this matter. Whatever may have been

the reason, it is clear that this power now rests exclusively in the judges of the superior courts; and it is also clear to our minds that prior to the act of 1889, the power was vested in the ordinaries. *Judgment affirmed.*