## STATE HIGHWAY DEPARTMENT OF GEORGIA
### *v.* BASS.

No. 14709.   FEBRUARY 15, 1944.

*T. Grady Head,* attorney-general, *D. W. Mitchell,* and *Marshall L. Allison,* assistant attorneys-general, for plaintiff in error.

*Will Ed. Smith, W. A. Wooten,* and *Lawton W. Griffin,* contra.

*Joseph D. Quillian,* for person at interest, not party.

ATKINSON, Justice. (After stating the foregoing facts.) ■ This case presents two general questions, to wit: (a) Under the workmen's compensation law, before the amendment of March 20, 1943 (Ga. L. 1943, p. 401), was an employee of the State Highway Department on December 16, 1942, included under its terms? (b) Was the amendment to the workmen's compensation law approved March 20, 1943 (Ga. L. 1943, p. 401), unconstitutional? We will consider first whether the amendment of March 20, 1943, was unconstitutional for any reason assigned.

The second ground of the motion to dismiss presents the contention that in so far as the act undertakes to subject the State Highway Department to liability for injuries occurring before the passage of the act it is unconstitutional as being a retroactive statute enacted in violation of article 1, section 3, paragraph 2 of the constitution of Georgia (Code, § 2-302), providing that, "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grant of special privileges or immunities, shall be passed." On the question as to whether the act is unconstitutional on the ground thus asserted the members of this court are equally divided in opinion,

Bell, Chief Justice, Atkinson and Wyatt, Justices, being of the opinion that it is not subject to such attack, and Jenkins, Presiding Justice, Grice and Duckworth, Justices, being of the contrary opinion. The views of the latter are expressed in an opinion prepared by Justice Duckworth, concurred in fully by Justice Grice, and concurred in as to this point only by Presiding Justice Jenkins, and delivered herewith. The views of Bell, Chief Justice, Atkinson and Wyatt, Justices, are as follows:

A retroactive, or retrospective statute is not unconstitutional unless it affects vested rights or interests. In the case of *Pritchard* v. *Savannah Street &c. Railroad Co., 87 Ga.* 294 (13 S. E. 493, 14 L. R. A. 721), it was stated: "The constitution of 1865 forbade the passage of 'retroactive laws, injuriously affecting any right of the *citizen.*' No provision against retroactive legislation appears in the constitution of 1868. That of 1877 forbids the passage of a 'retroactive law.' Construing together the above constitutional provisions, . . we take it that they all amount to substantially the same thing, and mean that retroactive laws which do not injuriously affect any right of the *citizen* . . may be passed." [Italics ours.] This decision was approved and reaffirmed in *Baker* v. *Smith, 91 Ga.* 142 (16 S. E. 967), and in *Bacon* v. *Mayor & Aldermen of Savannah, 105 Ga.* 62 (31 S. E. 127). In *Mills* v. *Geer, 111 Ga.* 275, 280 (36 S. E. 673, 52 L. R. A. 934), and in *Hammack* v. *McDonald, 153 Ga.* 543 (113 S. E. 83), the quotation from *Pritchard* v. *Savannah Street &c. Railroad Co.,* supra, is again quoted and approved, with this comment: "That instrument simply strikes at such retrospective legislation as injuriously affects some substantial right of the *citizen.*" (Italics ours.) Again in *Bullard* v. *Holman, 184 Ga.* 788, 792 (193 S. E. 586, 113 A. L. R. 763), in referring to the above cases, it is said: "In the rulings just cited this court has definitely settled the law to be that our constitution forbids the passage of only those retroactive, or rather retrospective, laws which injuriously affect the vested rights of *citizens.*" (Italics ours.)

There is authority to the effect that the right of the State, as distinguished from the right of a citizen, may be impaired by retrospective laws. "The State may constitutionally pass retrospective laws impairing its own rights." 12 C. J. 1087, § 781.

The rights of the State may be impaired by retrospective laws. 16 C. J. S. 861, § 417. "The State may constitutionally pass retrospective laws waiving or impairing its own rights, . . and it may impose upon itself . . new liabilities with respect to transactions already past, despite a constitutional prohibition." 16 C. J. S. 864, § 417. "A state, however, may constitutionally pass a retroactive law which impairs its own rights." 11 Am. Jur. 1195, § 366.

In addition to the foregoing authority, the instant case is controlled by the principle decided in *Cannon* v. *Rowland, 34 Ga.* 422, and *Lewis* v. *Turner, 40 Ga.* 416. In order to analogize these cases with the instant case it is well to digress here and review the circumstances and conditions at the time of these decisions, and the legal principle involved therein.

By the act approved March 5, 1856 (Ga. L. 1855-1856, p. 154), railroad companies were made liable for personal injuries to employees by reason of negligence of other employees. In 1857, in the case of *Walker* v. *Spullock, 23 Ga.* 436, a wife sought to recover damages for the death of her employee-husband for carelessness of other employees, and the court held that the Western and Atlantic Railroad was not a "Railroad Company," but property belonging to the State and administered by agents of the State, and was not liable under the act of 1856. Subsequently on December 19, 1860 (Ga. L. 1860, p. 24), the legislature adopted a Code which by the act approved December 16, 1861 (Ga. L. 1861, p. 28), was not to be effective until January 1, 1863. In this Code, by § 889, the Western and Atlantic Railroad, known as the State Road, was put upon the same basis as other railroads in reference to injuries by fellow servants. On April 18, 1863, the legislature passed an act (Ga. L. Ex. Sess. 1863, p. 182), stating, that the compilers of the Code had failed to embrace therein the laws in relation to the liability of the Western and Atlantic Railroad for damages in operating trains, and provided that laws creating liability for other railroads in operating trains would apply equally to the Western and Atlantic Railroad; and further provided that all suits brought against said railroad since the adoption of the Code (December 19, 1860), were to be legal and valid.

The apparent inconsistency in the foregoing statements that the Code of 1863, by § 889, contained certain law in reference to the

Western and Atlantic Railroad, and that the act of 1863 (Ga. L. Ex. Sess. 1863, p. 182), stated that the Code had failed to embrace this law, may be accounted for by reason of the fact that the Code of 1863, § 889, though it provided that the Western and Atlantic Railroad was put on the same basis as other railroads in reference to injuries to fellow servants, it did not include the additional provision as provided in the act, that all suits brought against said railroad since the adoption of the Code (December 19, 1860), were declared to be legal and valid. Anyway, the act of April 18, 1863 (Ga. L. Ex. Sess. 1863, p. 182), though it re-iterated and re-enacted § 889 of the Code of 1863, did go further and make the additional provision respecting the status of suits then existing against the railroad.

In March 1863, a widow brought a suit against the superintendent of the Western and Atlantic Railroad for the homicide of her husband, an engineer, who was killed in a collision in July, 1862. In this case, *Cannon* v. *Rowland*, supra, the court held: "That under the provisions of the act of 18th April, 1863, the action is maintainable."

This question was again before the court in *Lewis* v. *Turner*, supra. In that case, a suit for damages by an employee on account of negligence of a fellow servant, the accident happened July 8, 1859, and suit was filed in April, 1861. In the opinion it was said: "This suit was pending at the date of the act of 1863, and was brought after the adoption of the Code, and is, therefore, included in that act, although when the wrong was done no such suit could by law have been brought against this road. It is a retroactive statute in terms. The Western & Atlantic Road belongs to the State, and it is no infringement of any private right for the legislature to pass such a retroactive law. The State is the real party; the suit is nothing but a mode provided by law to ascertain what the State owes the citizen, on the principle that applies to private persons."

The legislature of 1943, was in almost an identical situation as the legislature of 1863. Each desired to assume liabilities and provide compensation for past occurrences. By a part of the act of 1943 the General Assembly provided compensation for past accidents of employees who had been employed in a department of the State that had previously to the amendment operated under

the workmen's compensation law. The legislature of 1863 assumed liability for certain accidents in the operation of the State Railroad, which occurred prior to the act, and for which suit was brought after December 19, 1860.

It is well recognized in this State, and in other jurisdictions which have a constitutional provision against the passage of retroactive laws, that such inhibition does not apply to laws curing defects in the remedy, or conferring rights already existing, or adding to the means of securing and enforcing the same, and the reason assigned for the non-application of the rule against retroactive laws in such instances is based upon the fact that no one,—no individual, no citizen, has a vested right in a mode of procedure, or a remedy. It will be noted that such laws are, in fact, retroactive but are recognized as valid because they do not injuriously affect the rights of citizens,—the citizens having no vested right in a mode of procedure or a remedy.

To apply the constitutional provision against "retroactive laws," as meaning any retroactive law, rather than those which "injuriously affect the right of citizens," would be contrary to the many decisions of this court holding that remedial laws, even though retroactive, are valid; as the reason for holding these laws to be constitutional is based on the fact that there is no vested right of the citizen involved.

This court in *Cannon* v. *Rowland,* and *Lewis* v. *Turner,* supra, having held that a law authorizing the creation of liability against the State covering past occurrences on a railroad was not unconstitutionally retrospective, we are of the opinion that that part of the act of 1943 providing for compensation for accidents that occurred prior to the adoption of the act is not unconstitutional as being a retroactive law under article 1, section 3, paragraph 2, of the constitution of Georgia (Code, § 2-302). In further support of this view we may call attention to the case of New Orleans *v.* Clark, 95 U. S. 644, 24 L. ed. 521, where, in construing the constitution of the State of Louisiana, which contained a provision "that no retroactive law shall be passed," the United States Supreme Court held: "The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the State, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legis-

lation *injuriously affecting individuals,* and thus protect vested rights from invasion." (Italics ours.) See also *Cullman County v. Blount County,* 160 Ala. 319 (49 So. 315, 18 Ann. Cas. 322), where the Supreme Court of Alabama in passing upon the constitutional inhibition against retroactive legislation in the constitution of that State, held that it applied to such retroactive legislation as injuriously affected individuals. The act here in question was in the nature of curative legislation. In *Bass* v. *Columbus,* 30 *Ga.* 845, 852, it was said: "The end of all confirmatory laws, so far as they are retroactive, is to give effect to acts which were before inoperative. Our digests abound with statutes confirming the void acts of public officers and others occupying some fiduciary relation, and that such is the proper effect of such laws, was adjudged by the Supreme Court of the United States in the case of Wilkinson v. Leland, 2 Peters, 662." See also *Georgia Railway & Electric Co.* v. *Decatur,* 29 *Ga. App.* 653 (6) (116 S. E. 645).

The decisions relied upon by the plaintiff in error in *Bank of Norman Park* v. *Colquitt County,* 169 *Ga.* 534 (150 S. E. 841), and *Walker County Fertilizer Co.* v. *Napier,* 184 *Ga.* 861 (193 S. E. 770), do not in our opinion rule anything contrary to the views above expressed. The case of *Ross* v. *Lettice,* 134 *Ga.* 866 (68 S. E. 734, 137 Am. St. R. 281), was in effect a suit against a county and did not involve a claim against the State. The other facts were also materially different from those of the instant case, in that it had been adjudicated that there was no liability against the county; the liability, if any, being against the members of the board as individuals. The case therefore is not in point.

However, as indicated above, the Justices are equally divided in opinion as to the question above discussed, and therefore the judgment of the trial court holding the act valid as against such attack stands affirmed by operation of law.

■ The third ground of the motion to dismiss was based on the objection that the act approved March 20, 1943 (Ga. L. 1943, p. 401), sought to amend and repeal section 114-101 of the Code by reference to the number of the section, and without distinctly describing the law to be amended and repealed as well as the alteration to be made. Upon examination of the act it will be found that it did two things:

First. To the definition of "employer," as found in the workmen's compensation law (Code, § 114-101), it added "the State of Georgia and all departments thereof." In effecting this change in the law the legislature repealed § 114-101, which defined "employer" and "employee," and re-enacted the section in the identical language, except that in the definition of "employer" it added, "the State of Georgia and all departments thereof."

Second. It added a new paragraph (§ 114-101A), to the Code, providing, among other things, that accidents to employees of State departments which had been operating under the workmen's compensation law that occurred before the passage of this act would be treated as compensable accidents just as though the employee had been covered under the workmen's compensation law.

The first change, which provided that the word "employer" would include the State of Georgia and all departments thereof, is properly provided for by describing the law to be amended or repealed, and the alteration to be made. While the caption of the act begins by describing the law to be amended simply as "section 114-101 of the Code of 1933," it also contains the phrase "the original act," clearly referring thereby to the section previously mentioned. In the same connection, it further appears that such "original act" is one that contains a definition of "employer" as related to the workmen's compensation law, and similar descriptive references are also found in section 2. The law to be amended is thus distinctly described, and is not left to be identified simply by reference to the number of the section of the Code. As to this phase, the act of 1943 did not purport to repeal or modify any provision of an existing statute except by enlargement so as to include an additional employer, and the decision in *Bagwell* v. *Lawrenceville*, 94 *Ga.* 654 (21 S. E. 903), would seem to be apropos: "The phrase, 'An act to amend the several acts incorporating the Town of Lawrenceville,' is sufficiently descriptive of the law to be amended, the amending act not undertaking to expressly repeal or modify any of the provisions contained in the acts incorporating the Town of Lawrenceville, but only adding affirmative legislation which might have been constitutionally enacted without making any reference whatever to existing laws touching that town, the sole repealing clause in the act being the usual general clause repealing all conflicting laws and parts of laws. The descriptive

phrase being set out in the title of the act, it was unnecessary to repeat it in the body of the same." See also, in this connection, *Dowda* v. *State of Georgia,* 74 *Ga.* 12; *Town of Maysville* v. *Smith,* 132 *Ga.* 316 (64 S. E. 131).

The first four lines in the caption to the act say: "An act to amend section 114-101 of the Code of Georgia of 1933 by adding thereto a provision that all employees of the State of Georgia shall be placed under the workmen's compensation laws of Georgia." That is exactly what was done, and all that was done, in the first section of the act. The method adopted so to change the law, to wit: "That section 114-101 is hereby repealed in its entirety and a new section added in lieu thereof to read as follows," then re-enacting the identical section defining "employers," with the addition that the State of Georgia should be an "employer;" was in fact nothing more than an amendment to the law, which was amply described and provided for in the caption. It was a definite notice as to the alteration to be made. Whether it be considered that section 114-101 of the Code was repealed and then re-enacted at the same time, or whether it be viewed merely as being amended, it makes no difference, as the effect is the same. So, in so far as the objection refers to the "repeal," it is without merit. Consequently the first section of this act is not subject to the objection made.

The second section, which added a new paragraph to the Code (§ 114-101A), making certain accidents to employees that occurred before the passage of the act compensable, was distinctly described in the caption, was again described in the body of the act, and was sufficient to put everyone, legislators and the public who might be affected, on guard as to all matters connected with this subject matter.

In connection with both sections of the act, see: *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893); *Fite* v. *Black,* 85 *Ga.* 413 (3) (11 S. E. 782); *Georgia Southern & Florida Railroad Co.* v. *George,* 92 *Ga.* 760 (2) (19 S. E. 813); *Silvey* v. *Phoenix Insurance Co.,* 94 *Ga.* 609 (21 S. E. 607); *Fullington* v. *Williams,* 98 *Ga.* 807 (2) (27 S. E. 183); *Puckett* v. *Young,* 112 *Ga.* 578 (2) (37 S. E. 880); *Cunningham* v. *State,* 128 *Ga.* 55 (57 S. E. 90); *Tison* v. *Doerun,* 155 *Ga.* 367 (2) (116 S. E. 615); *Holland* v. *State,* 155 *Ga.* 795 (2) (118 S. E. 203); *Southwestern Railroad Co.* v. *Wright* 156 *Ga.* 1 (118 S. E. 552).

Accordingly we hold that the act of 1943 (Ga. L. 1943, p. 401), does not violate article 3, section 7, Paragraph 17, of the constitution of this State (Code, § 2-1817).

■ The fourth ground of the motion to dismiss is based on the ground that the act of 1943 (Ga. L. 1943, p. 401), would grant a donation or gratuity in contravention of article 7, section 16, paragraph 1, of the constitution of the State (Code, § 2-6401). There is no contention that it violates article 7, section 16, paragraph 2, of the constitution (Code, § 2-6402), as to granting extra compensation to an officer, agent, or contractor. Webster defines donation as "that which is given as a present, a gift. A voluntary transfer without consideration," and defines gratuity, as "something given freely, or without recompense, a free gift, a present." Bouvier's Law Dictionary defines donation as "a gift . . the act by which the owner of a thing voluntarily transfers . . the same . . without any consideration;" and defines gratis, as "without reward or consideration." Under the facts in the case it appears that at the time of the accident to this employee, on December 16, 1942, the State Highway Department was paying compensation to its employees under the workmen's compensation law, and did not cease payments until February 1, 1943. Whether or not the act of 1943, in authorizing the payment of compensation for this accident is in violation of this constitutional provision necessarily must turn on whether such payment would be a donation or gratuity. It must be borne in mind that this employee in working for the State Highway Department was deprived of any right to sue and recover compensation for damages for personal injuries. Being deprived of the right to sue for damages, if he entered and remained as an employee under a contract with his employer, either expressed or implied, that in case of an accident he was to receive compensation under the workmen's compensation law, then under such terms of employment the agreement to thus compensate him for accidents was a part of the consideration for his work, without which his monthly or weekly pay should have been larger, or his original employment contract might never have been entered into. Therefore, when the State Highway Department accepted his services, but did not furnish all of the compensation agreed upon, there was a consideration furnished by the employee for which he had not been recom-

pensed. We are here dealing with whether this payment is a donation or gratuity; and not with the legality of the agreement on the part of the State Highway Department, or the retroactive effect of the law authorizing the payment, which has been dealt with in the first division of this opinion. The State has received this employee's services for which it has not paid full consideration; the actual value of the privilege to be covered by the workmen's compensation law while employed by the State Highway Department need not be reduced to dollars and cents, but suffice it to say it has a value.

In *Georgia Penitentiary Company* v. *Nelms,* 65 *Ga.* 499 (38 Am. R. 793), where an act of the legislature authorized the governor to furnish a certain party convicts without charge, it was held that this was not a "donation" or "gratuity," because the party receiving the convicts furnished a consideration by feeding, clothing, providing medical attention, and maintaining them. In *Trotzier* v. *McElroy,* 182 *Ga.* 719 (186 S. E. 817), in discussing payment of pensions by a city to retired firemen, and whether such payments were gratuities, the court recognized that where the firemen had furnished a consideration it was not a gratuity. In *Aven* v. *Steiner Cancer Hospital,* 189 *Ga.* 126 (5 S. E. 2d, 356), where land owned by a municipality was leased in consideration of certain medical treatment for the poor, it was held that this was not a violation of the constitutional inhibition against a donation or gratuity. Where the State of Georgia granted a right of way for railroad purposes from which it expected to receive public benefits it was held that the grant was not a gratuity within the class of evils the constitution intended to prevent. State of Georgia *v.* Trustees of Cincinnati Southern Railway, 248 U. S. 26 (39 Sup. Ct. 14, 63 L. ed. 104).

In construing this section of our constitution, where there has been involved a consideration for the legislative grant, either past, present, or future, both this court and the Supreme Court of the United States have denominated such acts as not being within the scope of prohibited acts covered under the term "donation" or "gratuity."

In Fairfield *v.* Huntington, 23 Ariz. 528 (205 Pac. 814, 22 A. L. R. 1438), it was held: "An appropriation to compensate a State employee for an injury by accident in the course of and arising out

of his employment is not a donation within the prohibition of the constitution, notwithstanding the State was not legally liable to make the reparation. The same rule has been recognized and applied by the great majority of the courts that have dealt with the question. Notably, a different rule exists in California, as shown in editorial note following report of the Fairfield case in 22 A. L. R. 1445. However, the decisions in California relating to pensions for services that were rendered at a time when no pension law was in existence, are distinguishable from the instant case, since the statute here under consideration was designed to cover an employment where the State Highway Department as employer had been actually operating under the workmen's compensation law, even though it may not have been authorized to do so. Compare *DeWitt* v. *Richmond County*, 192 *Ga.* 770 (16 S. E. 2d, 579); Lamb v. Board of County Peace Officers Retirement Commission, 29 Cal. App. (2d) 348 (84 Pac. 2d, 183); Sweesy v. Los Angeles County Peace Officers Retirement Board (Cal. App.) (101 Pac. 2d, 732). As to its constitutional aspects, the present case also differs from Matkins v. State, (Tex. Civ. App.) (123 S. W. 2d, 953), since under the constitution of Texas the legislature is prohibited from granting by appropriation or otherwise any amount of money out of the treasury of the State to any individual on a claim, real or pretended, when the same shall not have been provided for by "pre-existing law." The quoted provision does not appear in the constitution of Georgia. See also in this connection, State of Wyoming v. Carter, 30 Wyoming 22 (215 Pac. 477, 28 A. L. R. 1089); Spitzig v. State, 119 Ohio St. 117 (162 N. E. 394); Nancolas v. Jones, 47 S. D. 157 (196 N. W. 749); Gross v. Gates, 109 Vt. 156 (194 Atl. 465); Goldstein v. State (N. Y.) 175 Misc. 114 (22 N. Y. S. 2d, 767).

Having thus reached the conclusion that the provisions contained in section 2 of the act under consideration referring to past injuries are not unconstitutional as granting a donation or gratuity, it necessarily follows that section 1 would not be subject to such objection. See *City of Macon* v. *Benson*, 175 *Ga.* 502, 506 (166 S. E. 26); *City of Atlanta* v. *Pickens*, 176 *Ga.* 833 (4) (169 S. E. 99).

■ The fifth and sixth grounds of the motion to dismiss will be treated together. The fifth ground alleges that the State Highway

Department could not be held liable for injury to its employees because no appropriation has been made by the General Assembly, nor has the budget commission set apart any funds for this purpose. And the sixth ground claims the highway department can not be held liable for injury to its employees, because in the absence of an appropriation for such purpose it would be in violation of article 3, section 7, paragraph 11, of the constitution of this State (Code, § 2-1811), which provides in part, that "no money shall be drawn from the treasury except by appropriation made by law." There is no merit in this contention, for the reason that we are not in the instant case dealing with the question of drawing money from the treasury, or what action the budget commission has taken; but only with the right to establish liability as against the highway department. The manner of discharging such liability is not here involved.

■ In view of the foregoing rulings it becomes unnecessary to pass upon the first ground of the motion to dismiss, which would require a determination of the question as to whether or not the State Highway Department was an employer as defined by the workmen's compensation law (Code, § 114-101), before the act of 1943.

No question is presented as to whether this statute sufficiently manifests consent of the State to be sued, or whether the compensation law as amended thereby provides sufficient procedural machinery as to· service and other matters for its enforcement against the State, or any department thereof, or whether if valid in all respects it was intended to be compulsory as against such employer. Consequently, no intimation is intended as to these or other questions not presented in the motion to dismiss. Compare 5 U. S. C. A., § 751; Silva v. United States, 292 Fed. 464.

*Judgment affirmed. Bell, Chief Justice, and Wyatt, Justice, concur; Jenkins, Presiding Justice, concurs in the rulings stated in the 2d, 3d, 4th, and 5th headnotes, and corresponding divisions of the opinion; Grice and Duckworth, Justices, dissent as to these rulings. As to the question stated in the first headnote and discussed in the corresponding division of the opinion, the Justices are evenly divided as shown in the opinion, and therefore, as to that question, the judgment stands affirmed by operation of law.*

DUCKWORTH, Justice, dissenting. ■ This case presents a num-

ber of constitutional questions. It involves the constitutional limitations upon legislative enactments as well as the constitutional duty laid upon the judiciary when legislative acts violate the constitution. No greater duty rests upon the three co-ordinate branches of the State government than that of scrupulously observing the letter and spirit of the constitution. Upon that document is erected our entire governmental structure. In it all individual rights must find anchorage. The constitutional inhibitions addressed to the legislative branch of the government, and which are here involved, are found in the Code, §§ 2-1817, 2-302, and 2-6401. These constitutional rules are prescribed for the guidance of the legislature and constitute definite limitations upon that branch of the State government. They are regarded by the constitution as being of such importance that the constitution declares that all legislative acts violating the same are void, and the judiciary is commanded to declare them so. Code, § 2-402. The majority opinion sustains the act of 1943 (Ga. L. 1943, p. 401), upon which the present case is based against the attack, which contends that it violates the Code, § 2-1817, which declares: "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending, or repealing act, shall distinctly describe the old law to be amended or repealed, as well as the alteration to be made." That act seeks to amend or repeal section 114-101 by reference to the number of the section without any attempt to distinctly describe the old law as well as the alteration to be made. Parts of the act are set forth in the majority opinion. Hence I deem it unnecessary to encumber this dissent by extensive quotations from that act. The caption and section 1 of the act merely refer to Code § 114-101 as being repealed. No description of that section is found anywhere in the act. No attempt is there made to describe in any respect the old law. The majority opinion asserts that the law enacted in lieu of the repealed section found in section 1 of the act is in fact a mere transposition of the old section with certain changes made therein, and hence under cited decisions of this court that amounts to a description as required by the constitution. If it be the same verbiage as that of the old law, this fact must be ascertained by a comparison of the two, and not by anything which the legislature has said in the act itself.

There is simply no description, and these circumstances can not by any strained construction constitute a definite description as the constitution requires. The obvious purpose of the constitution in requiring that the amending or repealing act must distinctly describe the old law as well as the changes to be made is to prevent fraudulent enactments, by making definitely sure that the members of the General Assembly, when voting on such proposed amendment or repeal, know the nature and substance of the old law which it is sought to amend or repeal. It could not seriously be contended that merely to recite the number of the Code section or the title of the old law would supply this information, and the constitution declares that such recitals are insufficient. Nor would a copy of the old law set forth in the new act, without language expressly identifying it as the old law, inform the legislators of the fact that it is the old law, and hence such procedure utterly fails to serve the purpose plainly intended by the constitution. In the first place, merely to set forth the substance of the old law without identifying it as such, is not a distinct description of the old law; and in the second place, if this would satisfy the constitutional requirements the present act can not be sustained on that ground, for the reason that alterations and changes admittedly were made by the new enactment in the old section, and hence to set it forth in such manner is to misdescribe rather than to describe the old law, and as ruled by this court in *Town of Maysville* v. *Smith,* 132 *Ga.* 316 (supra), such misdescription renders the new act void, for the reason that it fails to meet the constitutional requirement here invoked.

It is true that this court has repeatedly ruled that this provision of the constitution is inapplicable to repeals by implication, and despite the plain constitutional inhibitions against repeal or amendment without distinctly describing the old law repeals by implication have been sustained as valid, it being ruled that this constitutional provision applies only to an express repeal or amendment. See *Peed* v. *McCrary,* 94 *Ga.* 487 (3) (21 S. E. 232); *Edalgo* v. *Southern Railway Co.,* 129 *Ga.* 258, 266 (58 S. E. 846); *Silver* v. *State,* 147 *Ga.* 162 (93 S. E. 145); *Berry* v. *State,* 153 *Ga.* 169 (111 S. E. 669, 35 A. L. R. 370). I shall not undertake in this dissent to enumerate, analyze, and distinguish the many decisions of this court sustaining express amendments or

repeals against attacks made under this clause of the constitution, but I think it well to give consideration to some of those cases which most resemble the present act.

In *Adam* v. *Wright,* 84 *Ga.* 720 (supra), an act of 1880 (Ga. L. 1880-81, p. 650), which sought to repeal an act of 1879 was attacked upon the ground that it violated the constitutional provision here involved. This court sustained the validity of the act, holding that it distinctly described the law to be repealed as required by the constitution. The old law was described in both the caption and the body of the new act by asserting that it was an act approved August 26, 1879, and quoted its entire caption. Thus the description of the old law was as full as the caption of that act and specified the date on which it was approved. In *Fullington* v. *Williams,* 98 *Ga.* 807 (supra), it was held that by giving the date of approval of the act to be amended or repealed the new act, which also gave a general description of the provisions of the previous act, was sufficient. To the same effect see *Holland* v. *State,* 155 *Ga.* 795 (supra). In *Georgia Southern & Florida R. Co.* v. *George,* 92 *Ga.* 760 (supra), an act of 1892 amended an act of 1889 relating to procedure in the Supreme Court by adding at the end of section 5 of the old act a new provision, and then reciting that section 5 when thus amended would read "as follows," and then set forth the original section together with the amendment. This court, in *Peoples Bank* v. *Fidelity Loan & Trust Co.,* 155 *Ga.* 619 (117 S. E. 747), sustained an act of 1916 (Ga. L. 1916, p. 48), as against an attack based upon this clause of the constitution. The opinion there might lead to the belief that if the new act happened to contain the verbiage of the old law without identifying it as such this will suffice as a description. Reference to the repealing act, however, discloses that it describes the two Code sections there repealed by stating that section 3438 of the Code which is "as follows," then quoting the section in its entirety, and section 3442 which is "as follows," then quoting the section in its entirety, "are hereby repealed." Of course, the act there met fully the constitutional requirement as to description. It did not stop with a mere reference to the numbers of the Code sections, but went further and described the sections by declaring that they were as there set forth, which was a complete quotation of the two sections. Could it be reasonably contended that the act should have been

sustained had it stopped with a mere reference to the numbers of the sections as was done in the present case? To have set forth, not as descriptive of the old law as was there done, but as a new enactment as was here done, the verbiage of the amended or repealed law would have constituted no description whatever as contemplated by the constitution. It is true that in *Tison* v. *Doerun,* 155 *Ga.* 367 (supra), this court sustained an act as against an attack made under this clause of the constitution, although the act there sustained made no attempt to describe the old law except to set forth the caption of the old act without giving the date of its approval in the caption of the repealing act. I think that decision, although concurred in by all of the Justices, is unsound and is not controlling authority on the question. It cites in support of the ruling made *Adam* v. *Wright,* supra, although the facts in the two cases are materially different. As pointed out above, the *Adam* case described the old law by setting forth the caption and date of approval both in the caption and the body of the new act. Clearly the *Adam* case was not authority for the decision in the *Tison* case, and that decision is in irreconcilable conflict with the decision of this court, concurred in by all of the Justices, in *Town of Maysville* v. *Smith,* supra. In the latter decision it is pointed out that in the *Adam* case and the *Fullington* case, supra, this court held that the recital of the title of an act, coupled with the date of its approval, satisfied the constitution, and that in those decisions the fact that the date of approval of the old law was shown in the new act was stressed as furnishing matter other than the title of the act as descriptive of the old act, and it was stated that if the date of approval of the old act there involved had been correctly given it would have been sufficient to satisfy the constitution, but it was said: "Here this date being incorrectly given, it is rather matter of misdescription, and there is merely left a reference to the title of the act to be repealed, which by the terms of the constitution is insufficient." That decision is controlling on the proposition that reference to the title of the old law alone, without giving the date of approval, does not satisfy the constitution. A further reason why the decision in the *Tison* case is unsound and should not be followed is that the only reference to the old law in the act there sustained is made in the caption rather than in the body of that act. The constitutional direction is that the

amending or repealing act, and not the caption of the said act, "shall distinctly describe the old law to be amended or repealed." The caption of the act is not a part of the law. A good caption, in the absence of a valid act, is a nullity. *Botts* v. *Southeastern Pipe-Line Co.,* 190 *Ga.* 689 (10 S. E. 2d, 375). The caption may be looked to as an aid in interpreting the act, but a description of the old law, no matter how distinct, in the caption alone does not satisfy the constitutional requirement that such description must be found in the amending or repealing act. See *Crisp* v. *Head,* 187 *Ga.* 20, 24 (199 S. E. 219); *State Board of Education* v. *Richmond County Board,* 190 *Ga.* 588, 596 (10 S. E. 2d, 369). This court, in the opinion in *Cunningham* v. *State,* 128 *Ga.* 55, (supra), stated: "This matter of description sometimes appears in the title, sometimes in the act, and sometimes in both." That statement is not a ruling sustaining an act where the description is found only in the caption. It is not germane to the question there decided. The description there was found in the body of the act, and that description, after specifying certain alterations in section 341 of the Code, declared that the section when so amended should read "as follows," and then sets forth the entire section as thus amended.

I have found no decision of this court, aside from the *Tison* case, that holds that the description of the old law when found only in the caption of the new law satisfies the constitutional requirement. For all of these reasons I am confident that the *Tison* case is unsound and should not now be followed. Therefore, should the bare, general reference in the caption of the present act to "original act" by a strained construction be held to be sufficiently descriptive of the old law, which it certainly is not, it would not satisfy the constitution, since it nowhere appears in the body of the act. It would be difficult to draw an act which would offend the constitutional provision here involved if the present act does not do so. The present act does exactly what the constitution says must not be done, in that it repeals the old law by a mere reference to the number of the Code section, the exact language being as follows: "Section 114-101 is hereby repealed in its entirety." It makes no pretense of satisfying the further requirement of the constitution that it distinctly describe the old law. This ground of attack should have been sustained and the act held unconstitutional and void.

A further attack invokes the retroactive clause of the constitution contained in the Code, § 2-302. There ought to be no difficulty encountered by the courts or by the legislature in construing the plain and simple language found in this clause of the constitution. It is in six words as follows: "No retroactive law shall be passed." This language simply will not allow exceptions, and in my opinion does not authorize a construction réndering it applicable to limited classes of legislation, and inapplicable to other classes of legislation, although I am aware of numerous decisions by this court holding that it did not apply to certain types of retrospective laws. See *Pritchard* v. *Savannah Railroad Co.*, 87 *Ga.* 294 (supra); *Crawford* v. *Broomhead*, 97 *Ga.* .614 (25 S. E. 487); *Bacon* v. *Savannah*, 105 *Ga.* 62 (31 S. E. 127); *Mills* v. *Geer*, 111 *Ga.* 275, 280 (supra). Such decisions, whether authorized under this clause of the constitution or not, are now binding upon this court unless they are overruled, but I submit that in view of the above observations on the constitutional clause those rulings should not be extended, and no retroactive law, which differs from the laws sustained by these decisions, should be held valid in the face of this constitutional provision. It is my opinion that many of those decisions resulted from a failure by this court to take due note of the material change in the retroactive clauses of the various constitutions. The constitution of 1861 (Code of 1863, § 4905), declares: "Ex post facto laws, and laws impairing the obligation of contracts, and retroactive legislation injuriously affecting the right of the citizen, are prohibited." The retroactive clause of the constitution of 1865 (Code of 1868, § 4903), was exactly the same as that in the constitution of 1861. The acts under consideration in *Cannon* v. *Rowland, Lewis* v. *Turner,* and *Jordan* v. *Baynes,* (supra), were subject to this constitutional clause, and this court, finding in each case that the act there under consideration did not injuriously affect any right of the citizen, properly held that each of such acts was valid and did not offend this retroactive clause of the constitution. It is significant that the two previous constitutions containing a retroactive clause employed the identical language, to wit, "retroactive laws injuriously affecting any right of the citizen are prohibited," and this court, as the framers of the present constitution of 1877 knew, had construed this language to prohibit only those retroactive laws which injuriously affected

the rights of the citizen. Yet in drafting the present constitution the above quoted language was deliberately omitted. It seems to me that the conclusion is inescapable that if it had been the intention of the present constitution to limit forbidden retroactive laws to those only which injuriously affect the rights of the citizen, it would have employed the language of the two previous constitutions which clearly and unmistakably confined the constitutional inhibition to such laws. I think the judiciary can find no justification for brushing aside this material and glaring change in the verbiage of the constitution by simply holding that the language of the present constitution, to wit, "No retroactive law shall be passed," has the same meaning as the language of the previous constitutions which expressly limited the prohibited retroactive laws to those injuriously affecting the rights of the citizen. The present constitution does not say that *some* retroactive laws (laws injuriously affecting the rights of the citizen) shall not be passed, but expressly declares that *no* retroactive law shall be passed, and this language is the exact equivalent of saying that *all* retroactive laws are outlawed. In Mellinger *v.* City of Houston, 68 Tex. 37 (3 S. W. 249), it was said: "It can not be presumed that in adopting a constitution which contained a declaration 'that no retroactive law shall be made,' that it was intended to protect thereby only such rights as were protected by other declarations of the constitution which forbade the making of ex post facto laws, laws impairing the obligation of contracts, or laws which would deprive a citizen of life, liberty, property, privileges or immunities, otherwise than by due course of the law of the land." The due-process clause of the present constitution is a sufficient protection of all rights of the citizen against retroactive laws without aid or support from the retroactive clause here involved. The language of the constitution will not stand an interpretation that causes it to mean that retroactive laws imposing new obligations upon the State and conferring rights upon citizens are not inhibited thereby. It has never been held by this court that a retroactive act requiring the State to make an unconstitutional expenditure of public money was valid, and did not offend the retroactive clause of the constitution. By analogy the decision in *Ross* v. *Lettice,* 134 *Ga.* 866 (supra), which dealt with a county matter, sustains the proposition that a retroactive law imposing an obligation upon the State

as is done by the present act violates this clause of the constitution and is void. While that decision was rendered by five justices, Mr. Justice Beck not participating, it was cited with approval in *Wilkins* v. *Savannah*, 152 *Ga.* 638 (111 S. E. 42) and again in *Morris* v. *Interstate Bond Co.*, 180 *Ga.* 689 (180 S. E. 819), which were decisions concurred in by six justices. Section 2 of the present act expressly requires the State to make compensation payments to employees for disabilities resulting from injury sustained prior to the enactment of this law. Admittedly the State owed no duty to such employees, nor was the State under a legal obligation to pay any compensation for such disabilities. Any payment which the State may now make to such employees will be without obligation and without consideration other than the requirements of this retroactive law. The employees receiving it will thereby obtain something for nothing. It will be free. It will be a donation or gratuity in direct violation of the constitution. The Code, § 2-6401, declares: "The General Assembly shall not, by vote, resolution or order grant any donation or gratuity, in favor of any person, corporation or association."

It is argued in the opinion of my associates that, although at the time of their employment the law did not authorize the State to make compensation payments, yet the agent of the State representing the State in making the contracts of employment agreed on behalf of the State that such payments would be made as a part of the compensation for services, and hence the State has a moral obligation to pay. A contract with and on behalf of the State in violation of the law can never constitute a moral obligation of the State. The parties at the time of such employment were presumed to have known the law, and knowing it to have knowingly undertaken to illegally impose an obligation upon the State. Such conduct affords no moral basis for the present retroactive law which seeks to impose upon the State the duty of fulfilling the terms of that illegal agreement. This retroactive law, in requiring the State to pay for disabilities arising prior to its enactment, requires the State to do an unconstitutional act, and to make an illegal disbursement of public money, and hence it reaches and affects the vital interests of every citizen of the State whose tax contributions make up the funds thus expended. The State is not some mythical thing, but is the people, and any matter that

adversely affects the State adversely affects the rights of the individual citizen. The legislature can not pass a valid retroactive law which thus injuriously affects the State. Such a law violating as it does this plain constitutional inhibition is by the constitution itself (Code, § 2-302), adjudged to be void, and it is the duty of the judiciary so to declare. The present act is attacked by the State Highway Department upon the ground that it grants donations and gratuities in violation of the constitution (Code, § 2-6401). When it comes to dealing with a matter vitally affecting every citizen of the State, a constitutional declaration on that subject should be accepted as meaning what it clearly states, and should not be nullified or rendered uncertain by definitions. The ordinary man knew at the time of the adoption of the present constitution the ordinary and accepted meaning of a donation or gratuity. That is the meaning which it is the duty of this court to give to the clause of the constitution containing these words, and this court in previous decisions has so construed this clause of the constitution. See *McCook* v. *Long*, 193 *Ga.* 299 (18 S. E. 2d, 488), and the many decisions there cited and discussed. I think the act relied upon by the defendant in error is void, because it contravenes each of the provisions of the constitution above invoked by the State Highway Department. Therefore, I think that the judgment of the lower court should be reversed.

I am authorized by Mr. Justice Grice to say that he concurs in this opinion. I am further authorized to state that Mr. Presiding Justice Jenkins concurs in so much of it as expresses the view that section 2 of the act in undertaking to provide compensation for past injuries is unconstitutional as being retroactive in violation of the constitution.