923 F.2d 1441
 1991-1 Trade Cases 69,314
 Terrence Lee FERRERO, Plaintiff, Counter-defendant, Appellant,
v.
ASSOCIATED MATERIALS INCORPORATED, a Delaware Corporation;
Alside, Inc., a Delaware Corporation, Defendants,
Counter-claimants, Appellees.
 No. 90-9012.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 1, 1991.
 
 James Banks Deal, John Wesley Gibson, Gibson & Deal, Norcross, Ga., for plaintiff, counter-defendant, appellant.
 Edward Scott Smith, Ford & Harrison, Atlanta, Ga., for defendants, counter-claimants, appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE*, Senior District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case arises on an expedited appeal from an interlocutory order granting a preliminary injunction.
 
 I. STATEMENT OF THE CASE
 A. Background Facts
 
 2
 In January of 1976, Terrence Lee Ferrero, the plaintiff below, was hired as a building products salesman by the defendant, Associated Materials, Inc. During his orientation, he signed an employment contract which included a covenant not to compete.
 
 
 3
 Initially, Ferrero worked in the Greater Atlanta area. In 1978, Ferrero was transferred to Knoxville, Tennessee, where he spent seven years as a salesman. In 1985, he was transferred back to Atlanta and given sales territory # 838 (northern Georgia, and parts of South Carolina and Florida).
 
 
 4
 Ferrero evidently was a very successful salesman. He serviced 136 accounts and accounted for $4.8 million in sales in 1989, which was 75% of the activity in Associated Materials' Atlanta warehouse. Ten of Ferrero's accounts were his most important, accounting for more than half of his total sales and 40% of the warehouse's total activity.
 
 
 5
 Essentially, Associated Materials' products are indistinguishable from the products of Associated Materials' competitors. Associated Materials, however, attempts to distinguish itself by cultivating customer good will through various incentives and quality service. Associated Materials' sales strategy is to create a close relationship between its salesforce and its customers. To this end, Associated Materials spent nearly $336,000 over the last five years to enable Ferrero to take various buyers on trips to Europe and the Caribbean. In addition, Associated Materials spent $96,099 in order to enable Ferrero to entertain various buyers through meals, sporting events, and other forms of entertainment. With the money spent on building Associated Materials' goodwill, Ferrero grew to be close friends with the buyers for his ten largest accounts. Ferrero also eventually learned about various trade secrets.
 
 
 6
 On April 15, 1990, Ferrero resigned from Associated Materials. Associated Materials then transferred Ron Williams from a territory in North Carolina to replace Ferrero. Associated Materials claims that it takes at least two years for Williams to become completely familiar with Ferrero's former territory.
 
 
 7
 On July 5, 1990, Associated Materials wrote Ferrero to clarify the existing covenant not to compete. Associated Materials informed Ferrero that the previous covenant was superseded by a new covenant.
 
 
 8
 On August 23, 1990, Ferrero wrote Associated Materials that he intended to form a corporation called American Wholesale Building Supply Company and he intended to compete with Associated Materials in the greater Atlanta area.
 
 B. Procedural History
 
 9
 On April 18, 1990, Ferrero filed a complaint in Georgia state court seeking declaratory and injunctive relief from Associated Materials' intentions to enforce the covenant not to compete. The next day Associated Materials removed the action to federal district court on the basis of diversity of citizenship. The parties at the time agreed to observe the status quo until the district court ruled on the preliminary injunction. On May 3, 1990, Ferrero moved for a preliminary injunction. On June 18, 1990, the district court denied Ferrero's motion for a preliminary injunction because Ga.Code Ann. Sec. 13-8-2.1 (Supp.1990) was soon to become effective and would probably permit the retroactive reformation of covenants not to compete.
 
 
 10
 On June 4, 1990, Associated Materials filed a counterclaim asking for reformation of the 1976 covenant. On August 28, 1990, Associated Materials sought a temporary restraining order against Ferrero because of Ferrero's announced intention to compete. The district court, with the approval of the parties, treated the temporary restraining order as a request for a preliminary injunction. On October 11, 1990, the district court granted the preliminary injunction. Ferrero then brought this appeal.
 
 
 11
 On November 29, 1990, pursuant to Ga.Code Ann. Sec. 13-8-2.1(g)(1), the district court "blue pencilled" the reformed covenant. The statute permits courts to narrow covenants, striking down any overreaching portion. The district court did so by restricting Ferrero from competing in Cobb and Fulton counties for eighteen months. Therefore, Ferrero may currently compete for forty-three percent of his 1989 sales volume and he may compete for the rest of his volume on October 15, 1991.
 
 II. STANDARD OF REVIEW
 
 12
 This Court reverses a district court's grant of a preliminary injunction only when the district court abuses its discretion. United States v. Alabama, 791 F.2d 1450 (11th Cir.1986). Findings of fact made in connection with a grant of a preliminary injunction are set aside only if clearly erroneous. Id. While findings of law are ordinarily reviewable de novo, this Court will defer to a district court's interpretation of unsettled questions of the law of the state where the court sits. Shipes v. Hanover Ins. Co., 884 F.2d 1357 (11th Cir.1989).
 
 III. ANALYSIS
 
 13
 A. Georgia Common Law and Covenants Not to Compete
 
 
 14
 A federal court sitting in diversity applies the substantive law of the state in which it sits, including that state's choice of law. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, the district court correctly applied the Georgia conflict of laws rule for contracts which is lex loci contractus. Residential Industrial Loan Co. v. Brown, 559 F.2d 438 (5th Cir.1977).[1] Because the last act required for contract formation occurred in Georgia, we conclude that Georgia's contract law governs this employment contract. See Nasco, Inc. v. Gimbert, 239 Ga. 675, 238 S.E.2d 368 (1977).
 
 
 15
 The original covenant not to compete signed by Ferrero stated that he promised not to "engage in the manufacture, sale, distribution or promotion of the sale of ... any ... products manufactured or sold by the employer ... in any area or territory in which the employee shall have been located, employed or worked...." Under Georgia common law, this covenant not to compete could be struck down for two reasons: first, because one cannot create a covenant not to compete that applies to employment in a given trade "in any capacity," Fields v. Rainbow International Carpet Dyeing & Cleaning Co., 259 Ga. 375, 380 S.E.2d 693, 693 (1989); and second, because one cannot create a covenant not to compete that "allow[s] the employer to assign the employee to any territory it desires with the restrictive covenant following the employee." Orkin Exterminating Company, Inc. v. Pelfrey, 237 Ga. 284, 227 S.E.2d 251, 252 (1976).
 
 
 16
 When covenants not to compete are too broad, Georgia common law deems them unenforceable. The courts in such a case refuse to issue injunctions or award damages. See, e.g., Nasco, Inc. v. Gimbert, 239 Ga. 675, 238 S.E.2d 368 (1977). Moreover, the Georgia courts have refused to adopt a "blue-pencil theory" to reform overbroad contracts. Rita Personnel Services v. Kot, 229 Ga. 314, 191 S.E.2d 79 (1972). Unless the contract is severable on its face, see Horne v. Drachman, 247 Ga. 802, 280 S.E.2d 338 (1981), the contract is normally struck down in its entirety. See Howard Schultz & Assoc. v. Broniec, 239 Ga. 181, 236 S.E.2d 265 (1977). Therefore, it seems that the 1976 covenant not to compete was completely unenforceable under Georgia common law, prior to the passage of the statute.
 
 
 17
 B. The New Georgia Statute Permitting Contracts in Partial Restraint of Trade
 
 
 18
 Associated Materials argues that a new Georgia statute permitting contracts in partial restraint of trade changes the common law and saves this covenant not to compete. The new Georgia statute, codified at Ga.Code Ann. Sec. 13-8-2.1 (Supp.1990), does four things relevant to this dispute. First, it permits an employer to unilaterally reformulate a covenant not to compete to eliminate "unclear or overbroad" language "so long as [the reformation] is no broader than the terms of the original restraint." Id. at Sec. 13-8-2.1(f)(3). Second, it creates a presumption that sufficiently narrow covenants are acceptable. Id. at Sec. 13-8-2.1(c)(3). Third, it presumes that injunctions are appropriate remedies to a violation of such a covenant. Id. at Sec. 13-8-2.1(g)(1). And, fourth, it instructs the courts to reformulate covenants so they are not overreaching or unconscionable. Id. at Sec. 13-8-2.1(g)(1).
 
 
 19
 Pursuant to this new statute, Associated Materials unilaterally reformulated the contract.[2] There is no dispute that if this new statute applies, the statute would save this covenant not to compete from being void under Georgia common law. However, the following questions are in dispute: (1) should this statute be applied to this case; (2) does such an application violate the Georgia statute and constitutional provision forbidding retroactive applications of statutes; (3) does the new statute violate the Georgia Constitution; (4) is an injunction an appropriate remedy; and (5) should this covenant be "blue pencilled"?
 
 
 20
 (1) Should this Statute be Applied to this Case?
 
 
 21
 The district court applied the statute to the case at hand. Ferrero alleges that this application is a retroactive application since the original contract was signed in 1976 and he quit working for Associated Materials on April 15, 1990, while the statute's effective date was July 1, 1990.
 
 
 22
 Ferrero argues that the district court erred in applying the statute because of a Georgia rule of statutory construction which disfavors retroactive applications. Georgia actually has two rules of statutory construction governing retroactivity, each designed to apply to separate types of statutes. The first rule prohibits a "statute [from being] given a retroactive operation unless such construction is absolutely demanded." J. Scott Rentals, Inc. v. Bryant, 239 Ga. 585, 238 S.E.2d 385, 386 (1977). The second rule carves out an exception to the first rule for both procedural statutes and statutes that affect only a litigant's remedy. These statutes are deemed retroactive "absent an expressed contrary intention." Polito v. Holland, 258 Ga. 54, 365 S.E.2d 273, 273 (1988). The Georgia courts, as a matter of convenience, refer to the statutes covered by the first rule as "substantive" and the statutes covered by the second rule as "procedural." See id. 365 S.E.2d at 273-74.
 
 
 23
 There is a considerable body of case law in Georgia which attempts to distinguish between substantive and procedural statutes. The major difference between substantive law and procedural law is: "[s]ubstantive law is that law which creates rights, duties, and obligations[, while] procedural law is that law which prescribes the methods of enforcement of rights, duties and obligations." Id. at 274. The Georgia Supreme Court has restated this proposition in a number of ways, for example, the court has described procedural laws as those "laws [which] cur[es] defects in the remedy, or [which] confirm[s] rights already existing, or [which] add[s] to the means of securing and enforcing the same." Pritchard v. Savannah St. & R.R.R. Co., 87 Ga. 294, 13 S.E. 493, 494 (1891). However, laws which would normally be considered procedural may be deemed substantive for the purpose of determining retroactivity if the laws enact changes which affect "vested right[s]." Bullard v. Holman, 184 Ga. 788, 193 S.E. 586, 588 (1937); see also Canton Textile Mills v. Lathem, 253 Ga. 102, 317 S.E.2d 189 (1984). While the concept of vested rights is not completely clear, the Georgia courts have identified several dimensions of the concept. It is clear that a vested right cannot be contingent. See Pritchard, 13 S.E. at 495. The Georgia Supreme Court has also held that while a vested ground of defense is protected from retroactive changes in the law, see Bullard, 193 S.E. at 589, one cannot have "a vested right in a state of the law which left the injured party without, or with only a defective, remedy." Pritchard, 13 S.E. at 495; see also Bullard, 193 S.E. at 589 (one cannot have a vested right in a statute creating a defense to a breach of contract action since it is a " 'naked legal right.' " (quoting Ewell v. Daggs, 108 U.S. 143, 151, 2 S.Ct. 408, 414, 27 L.Ed. 682 (1883))).
 
 
 24
 The statute is both procedural and substantive. It is procedural when it encourages the courts to issue injunctions and reform the contract as well as when it permits employers to reformulate covenants so that they are narrower and clearer. These three aspects of the statute are procedural because they merely "prescribe[ ] the methods of enforcement of rights, duties and obligations." Polito, 365 S.E.2d at 274. Moreover, these three changes do not affect any vested rights. The statute, however, is substantive when it instructs the courts to presume that sufficiently narrow covenants are acceptable. Cf. Seaboard Airline Ry. Co. v. Benton, 175 Ga. 491, 165 S.E. 593 (1932) (A statute which instructs courts to presume negligence in certain circumstances is substantive.) However, while this provision is substantive, it is merely a codification of existing common law, see Merrill Lynch, Pierce, Fenner & Smith v. Stidham, 658 F.2d 1098 (5th Cir. Unit B 1981) (applying Ga. law), and therefore not a retroactive provision. See Lathan & Sons Co. v. City of Rome, 136 Ga. 398, 71 S.E. 770 (1911) (holding codifications not to be retroactive).
 
 
 25
 Therefore, since the statute is procedural, it is to be deemed retroactive absent a showing of a contrary legislative intent. See Polito, 365 S.E.2d at 273. Ferrero claims that the legislature did not intend the statute to have a retroactive application and, in the alternative, he claims that if the legislature intended the statute to apply to contracts signed before the effective date, it did not intend the statute to apply to situations where the employment relationship ended prior to the effective date of the statute.
 
 
 26
 We note that there is no support for either of Ferrero's claims about the legislative intent. Uncodified section two of the statute strongly implies that the legislature wanted a retroactive application of the statute. Section two states that "[t]his Act shall further apply to all remedies sought or granted after the effective date." 1990 Ga.Law at 1676, Sec. 2. The language of section two leaves us no room to pick and choose among the various possible covenants and apply the common law to some and the statutory scheme to others.
 
 
 27
 Finally, Ferrero argues that the legislature intended the statute to be retroactively applied only to those contracts which would be valid under the common law. Ferrero notes language throughout the statute which supports his position. For example, in the section permitting employers to clarify covenants, the statute states, in part, that: "persons or entities that benefit from any existing restraint may provide the persons or entities bound by such restraint with a clarification." Ga.Code Ann. Sec. 13-8-2.1(f)(3) (emphasis added). By examining this section alone, without viewing the overall statute, one could easily draw a few conclusions. The word "bound" is in the past tense. One could conclude from this fact that the legislature intended this statute to apply only to those who were legally bound under the common law. We, however, decline to narrowly read the statute section by section without examining how the sections relate to the entire statute. See Canton Textile Mills, 317 S.E.2d at 191. By examining the statute in its entirety, it is clear that Ferrero's position is without merit. First, uncodified section two does not draw distinctions on the basis of whether the covenant was binding under the common law. Second, such a reading is contrary to the legislative intent. When one recalls that the Georgia courts have been traditionally hostile towards these covenants not to compete and one notes both the broadness of uncodified section two and the language in section 13-8-2.1(a), which states that Georgia's new policy is to be in favor of enforcing these covenants, it becomes clear that the legislature intended to save the covenants that would previously have been unenforceable. As already noted, under the common law covenants which were too broad were struck down in their entirety. See Howard Schultz & Assoc. v. Broniec, 239 Ga. 181, 236 S.E.2d 265 (1977). Thus, if we were to adopt Ferrero's position and hold the statute partially retroactive by applying the statute only to those covenants which would be enforceable under the common law, we would be effectively gutting the statute and preventing it from remedying those situations that the legislature sought to reach.
 
 
 28
 We therefore hold that the new statute applies to the case at hand. Under this statute, it is undisputed that the covenant not to compete is valid.
 
 
 29
 (2) Does Such an Application Violate the Georgia Statute and
 
 
 30
 Constitutional Provision Prohibiting Retroactive
 
 
 31
 Applications of Statutes?
 
 
 32
 Ferrero next argues that the retroactive application of the statute violates a Georgia statute which prohibits the retroactive applications of other statutes. The Georgia statute states that
 
 
 33
 Laws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation. Laws looking only to the remedy or mode of trial may apply to contracts ... entered into ... prior to [the law's] passage ...
 
 
 34
 Ga.Code Ann. Sec. 1-3-5.
 
 
 35
 This statute does not bar the application of the new statute regulating contracts in partial restraint of trade to this case. First, the statute has an exception for statutes which affect only the remedies that one may seek. As discussed above, this statute mostly affects the remedies available in this case. And, second, the statute expresses only a preference against retroactive applications. It does not absolutely forbid retroactive applications.
 
 
 36
 Ferrero also argues that the retroactive application of the statute violates the Georgia constitutional provision which states that "no ... retroactive law ... shall be passed." Ga. Const. Art. I, Sec. 1, p 10. This provision, however, has been interpreted as not to apply to remedial or procedural statutes. See State Hwy. Dep't v. Bass, 197 Ga. 356, 29 S.E.2d 161 (1944). Therefore, we find Ferrero's argument without merit.
 
 
 37
 (3) Does the New Statute Violate the Georgia Constitutional
 
 
 38
 Provision Which Forbids the Legislature from
 
 Authorizing any Contract Which Lessens
 
 39
 Competition?
 
 
 40
 Ferrero claims that the statute violates Art. 3, Sec. 6, p 5 of the Georgia Constitution which forbids the legislature from authorizing "any contract ... which may have the effect of ... defeating or lessening competition."
 
 
 41
 The broad language of this constitutional provision has been narrowed by the application of a court created "rule of reason." See Durham v. Stand-By Labor of Georgia, Inc., 230 Ga. 558, 198 S.E.2d 145 (1973). The rule of reason protects those contracts which are reasonable in light of the interests of the parties and the interest of the public. Id. Thus, the legislature may encourage narrowly tailored contracts, which do not unreasonably chill competition, based upon the legislature's evaluation of the public interest.
 
 
 42
 Ferrero claims blue pencilling is unreasonable because it encourages employers to act in bad faith by writing unreasonably broad contracts knowing that few are litigated and knowing that when they are litigated the courts will reform the contract, thus binding all employees by some version of the covenant. Ferrero's argument can succeed only if he can prove that the Georgia courts' historical aversion to blue pencilling created a strong deterrent to employers' acting in bad faith. Under the old system, if few employees litigated overreaching covenants, then those employers who wrote overbroad covenants could be confident that the vast majority would succeed while a few would be struck down. Blue pencilling is unreasonable only if Ferrero can prove that the fear held by employers of having the courts strike down an occasional covenant in its entirety is sufficient to deter bad faith actions in the majority of cases which are never litigated. Ferrero provides this Court with insufficient proof of the unreasonableness of the statute.
 
 
 43
 The standard of review is that a Georgia statute will be struck down only when the act "plainly and palpably violates some provision of the ... State constitution." City of Atlanta v. Associated Builders, 240 Ga. 655, 242 S.E.2d 139, 141 (1978). It does not appear that the statute is in clear conflict with Art. 3, Sec. 6, p 5. There may be a conflict, but it is debatable and Ferrero has not sustained his high burden of proof.
 
 
 44
 (4) Is an Injuction an Appropriate Remedy?
 
 
 45
 Ferrero next argues that an injunction would not be appropriate in the case at hand. Before deciding whether the district court was correct in issuing the preliminary injunction, we note that we must first confront the threshold question of whether, under Erie, the court should have applied federal or state law to determine the appropriateness of issuing the preliminary injunction. Georgia law presumes that injunctions are appropriate remedies and that they should issue except in limited cases. Ga.Code Ann. Sec. 13-8-2.1(g)(1) (Supp.1990). Federal law, however, would allow preliminary injunctions to issue only when the moving party can establish:
 
 
 46
 (1) There is a substantial likelihood that he [or she] ultimately will prevail on the merits of the claim; (2) he [or she] will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.
 
 
 47
 Cate v. Oldham, 707 F.2d 1176, 1185 (11th Cir.1983).
 
 
 48
 It is clear that the outcome of this threshold choice of law question could lead to an outcome determinative result. Before performing the choice of law analysis, we pause to note that the federal procedural standards have been codified by reference in Rule 65 of the Federal Rules of Civil Procedure. See generally Wright & Miller, Federal Practice and Procedure: Civil Sec. 2943 (1973).
 
 
 49
 The Supreme Court in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), held that outcome determination analysis is not the sole approach to be followed in a choice of law context. Instead, "choices between state and federal law are to be made not by application of any automatic 'litmus paper' criterion, but rather by reference to the policies underlying the Erie rule." Id. at 467, 85 S.Ct. at 1141. The Hanna court held that by examining the policies intrinsic in the Erie rule, federal courts are required to apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act. Id. at 470-71, 85 S.Ct. at 1143-44. As previously noted, Federal Rule of Civil Procedure 65 incorporates traditional federal equity practice. We hold that rule 65 meets the criteria of Hanna, and therefore we apply federal procedure to determine whether the preliminary injunction was properly issued.
 
 
 50
 Turning to federal procedure, then, Ferrero claims that Associated Materials is not entitled to a preliminary injunction because it failed to show a substantial likelihood of success on the merits. Ferrero makes this argument on the basis of the grounds already discussed: the statute should not be applied to this case; such a retroactive application violates Georgia Code section 1-3-5; and the statute is unconstitutional. For the reasons explained above, Associated Materials prevailed on each of these arguments.
 
 
 51
 Ferrero next claims that Associated Materials failed to show that it will suffer irreparable harm without the injunction. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Id. at 1189. The district court found that should Ferrero be permitted to compete against Associated Materials, Associated Materials will lose its investment in good will and will lose its long-time customers. The district court concluded that this injury is "difficult, if not impossible, to determine monetarily." The former Fifth Circuit held that the loss of customers and goodwill is an "irreparable" injury. Spiegel v. City of Houston, 636 F.2d 997 (5th Cir., Unit A, 1981).
 
 
 52
 Ferrero also claims that he is damaged by the injunction more than Associated Materials would be damaged had the court not issued the injunction. Ferrero notes that his income has dropped by 50% since he quit working for Associated Materials. Ferrero claims that Associated Materials' loss estimates are speculative and even if Associated Materials lost all of Ferrero's former accounts, it's loss would amount to only 2.3% of Associated Materials' national sales. We disagree. First, we note that Associated Materials posted a $100,000 injunction bond to cover any of Ferrero's unwarranted losses. Second, we note the problem of the lost goodwill and long-time customers as well as the likelihood of layoffs should Associated Materials lose substantial business in Atlanta. Finally, this Court has held "specious" an argument suggesting that, in deciding this element of the preliminary injunction calculus, the court ought to compare the actual losses sustained to the size of the company. Merrill Lynch, Pierce, Fenner & Smith, 658 F.2d at 1102 n. 8.
 
 
 53
 Finally, Ferrero claims that Associated Materials failed to prove the impact of the injunction on the public interest. Ferrero argues that the public is best served by free competition and that this injunction injures competition. This balancing of the public interest has already been performed by the Georgia legislature when it presumed that injunctive relief is the appropriate remedy for a violation of this type of covenant. Ga.Code Ann. Sec. 13-8-2.1(g)(1). We adopt the Georgia legislature's determination.
 
 
 54
 (5) Should the District Court have Blue Pencilled the Contract?
 
 
 55
 Ferrero, in his briefs, complains that the district court did not blue pencil this contract. After the filing of the briefs, but before oral argument, the district court amended its judgment to blue pencil the agreement. Ferrero's argument is therefore moot.[3]
 
 IV. CONCLUSION
 
 56
 We therefore AFFIRM the court below.
 
 BIRCH, Circuit Judge, dissenting:
 
 57
 For the reasons that follow, I respectfully dissent. I am convinced that Associated Materials failed to demonstrate a substantial likelihood of success on the merits. A review of the development of the law applicable to employee restrictive covenants in Georgia as well as a straightforward reading of the 1990 statutory amendments ("Amendments") compels the conclusion that the courts of Georgia would refuse to enforce the Amendments under the circumstances in this case.
 
 
 58
 Those Georgia courts presented with the issue of the constitutionality of the Amendments are unanimous in their rejection of efforts to enforce employee restrictive covenants. In Hart v. Jackson & Cocker, Inc., No. 90-5661-3 (Dekalb County, Ga., Super.Ct. Sept. 7, 1990), Dekalb County Superior Court Judge Clarence F. Seeliger held the amendments unconstitutional. That case involved a pre-July 1, 1990 motion for injunctive relief to enforce a covenant not to compete. The employer advanced the Amendments to support its motion; the employee countered by arguing that the Amendments are unconstitutional. Judge Seeliger ruled:
 
 
 59
 The legislature has created an environment designed to insulate employers from competition and to encourage monopoly. The legislature has no power to provide a new definition of what constitutes an illegal restraint of trade under the Georgia Constitution.
 
 
 60
 It appearing that the Restrictive Covenant Act violates Article III, Section VI, Paragraph V(c) of the Georgia Constitution, dealing with competition and monopoly, O.C.G.A. Sec. 13-8-2.1 is hereby declared unconstitutional.
 
 
 61
 Id. at 7. The employer in Hart also raised the issue of retroactive legislation. Having found the Amendments to be unconstitutional, Judge Seeliger declined to reach that issue. An appeal in Hart is pending currently before the Georgia Supreme Court (Case No. S91X0057).
 
 
 62
 In American Outpatient Servs. Corp. v. Shah, No. 90-A-05501-2 (Gwinnett County, Ga., Super.Ct. Oct. 29, 1990), Judge Homer M. Stark of the Gwinnett County Superior Court refused to apply the Amendments retroactively:
 
 
 63
 The Court finds that O.C.G.A. Sec. 13-8-2.1 is in fact substantive in nature in that it does impair the obligations of contracts and creates rights, duties and obligations under said contracts. In the present case, if the statute were applied it would take a contract containing a non-competition covenant which was unenforceable and void from the date of signing as against public policy and breath [sic] new life into said covenant by blue-penciling the territorial limitation.... The Court in effect eliminates one party's vested defense to a void contract and imposes new obligations on that party. For these reasons, the Court finds that O.C.G.A. Sec. 13-8-2.1 is a substantive statute and only may be applied prospectively.
 
 
 64
 Id. at 5 (citations omitted). On December 13, 1990, Fulton County Superior Court Judge Frank M. Eldridge held many of the specific Amendments unconstitutional in Jackson & Coker, Inc. v. Kepley, No. D-80652 (Fulton County, Ga., Super.Ct.). In Kepley, as in Hart, the employer sought to enforce restrictive covenants against an employee which were in existence prior to July 1, 1990.
 
 
 65
 In the instant case, the employer, Associated Materials, unilaterally "reformulated" Ferrero's previously terminated employment contract under the authority of O.C.G.A. Sec. 13-8-2.1(f)(3). This was done through a letter dated July 5, 1990, dispatched to Ferrero after his resignation effective April 15, 1990, and after the initiation by Ferrero of a declaratory judgment action. That action was filed in Fulton County Superior Court on April 18, 1990 and sought invalidation of the employment contract and an injunction against its enforcement.
 
 
 66
 From a review of the employment contract challenged by Ferrero, it is clear beyond peradventure, as conceded by the majority, that "the 1976 covenant not to compete was completely unenforceable under Georgia common law, prior to the passage of the statute." Majority opinion at 1445. In those situations where the Georgia courts found restrictive covenants in employment contracts violative of the common law relative to "capacity" and "territory," the courts have declared the entire contract void. Richard P. Rita Personnel Services Int'l, Inc. v. Kot, 229 Ga. 314, 191 S.E.2d 79 (1972); Barrett-Walls, Inc. v. T.V. Venture, Inc., 242 Ga. 816, 819, 251 S.E.2d 558, 561 (1979) ("This provision of the covenant [not to compete] is overly broad and uncertain, rendering the entire covenant void on public policy grounds."); Owens v. RMA Sales, Inc., 183 Ga.App. 340, 341, 358 S.E.2d 897, 899 (1987) (Fact that restrictive covenant in employment contract "is clearly not limited in territorial effect ... thereby renders the entire contract illegal."); Jarrett v. Hamilton, 179 Ga.App. 422, 423, 346 S.E.2d 875, 876 (1986) ("[I]f any one of the non-competition clauses is unenforceable because of indefiniteness, overbreadth, or unreasonableness, then the whole agreement must fail."); Broome v. Ginsberg, 159 Ga.App. 202, 203, 283 S.E.2d 1, 2 (1981) ("When the [employment] contract involves the practice of a profession, it will be held void if it needlessly oppresses one of the parties...."). As defined in Black's Law Dictionary:
 
 
 67
 The word "void," in its strictest sense, means that which has no force and effect, is without legal efficacy, is incapable of being enforced by law, or has no legal or binding force....
 
 
 68
 Black's Law Dictionary 1573 (6th ed. 1990) (emphasis added) (citing Hardison v. Gledhill, 72 Ga.App. 432, 436, 33 S.E.2d 921, 924 (1945)).
 
 
 69
 In order for Associated Materials to enjoy a likelihood of success on the merits in this case, it must demonstrate that the portion of the Amendments which speaks to retroactive "reformulation," O.C.G.A. Sec. 13-8-2.1(f)(3), is applicable to Ferrero's situation. I suggest that they cannot. The unequivocal language of the statute when read in harmony with the law of Georgia mandates this conclusion.
 
 
 70
 The Bill of Rights of the Constitution of the State of Georgia, art. I, Sec. 1, para. 10 provides:
 
 
 71
 No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed.
 
 
 72
 This provision of the former colony is consistent with article I, section 10 ["Restrictions upon Powers of States"] of the Constitution of the United States which provides:
 
 
 73
 No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts....
 
 
 74
 U.S. Const. art. I, Sec. 10, para 1.
 
 
 75
 Consonant with these constitutional mandates, the Georgia statutory law addressing the enactment of laws and statutes specifically addresses the type of legislation which these Amendments represent. That statute states:
 
 
 76
 Laws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation. Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses entered into, accrued, or committed prior to their passage; but in every case a reasonable time subsequent to the passage of the law should be allowed for the citizen to enforce his contract or to protect his right.
 
 
 77
 O.C.G.A. Sec. 1-3-5 (emphasis added). As emphasized above, Ferrero terminated his employment and commenced a declaratory judgment action ostensibly to "protect his right" to be free from the in terrorem effect of the employment agreement existing at that time. Since the Amendments were passed by the Georgia legislature during the 1990 session and were to become effective on July 1, 1990, it appears that Ferrero timely acted to enforce his right to be free of what the Georgia courts consistently had found to be an unreasonable and unenforceable restraint, contracts which the Georgia courts characterized as void ab initio.
 
 
 78
 Accordingly, the unique issue presented in the case at bar and not examined in Hart and Kepley, is whether an employee has a protected right to rely upon pre-July 1, 1990 law to invalidate a pre-July 1, 1990 contract which imposed an invalid covenant not to compete and arose out of an employment relationship which had terminated. Both the Amendments and previously existing law answer that question in the affirmative.
 
 
 79
 The Georgia statute relied upon by Associated Materials, provides as follows:
 
 
 80
 In the interest of reducing or eliminating any unclear or overbroad aspect of the restraint, the persons or entities that benefit from any existing restraint may provide the persons or entities bound by such restraint with a clarification or reformulation of the restraint, whether or not the clarification or reformulation was requested, so long as it is no broader than the terms of the original restraint. Any clarification or reformulation on lesser terms so provided by the persons or entities that benefit from the restraint shall supersede any conflicting terms of the restraint and be binding regardless of whether additional consideration is provided. The person or entity bound by the restraint may rely absolutely on such clarification or reformulation in complying with the terms of such restraint.
 
 
 81
 O.C.G.A. Sec. 13-8-2.1(f)(3) (emphasis added). The key, operative and explicit language pertinent to our present inquiry is emphasized above. The legislature's clear mandate that retroactive reformulation should be applicable only in the case of "existing restraints" by which persons are "bound" is entirely consonant with the Georgia Constitution and in harmony with Georgia precedent. The contract which Associated Materials sought to reformulate unilaterally, after Ferrero had terminated his employment and sought a declaratory judgment of invalidity, was void. Hence, that contract was without "binding" force or effect. "Bound," as defined in Black's Law Dictionary, means:
 
 
 82
 As an adjective, denotes the condition of being constrained by the obligations of a bond, contract, covenant, or other moral or legal obligation.
 
 
 83
 Black's Law Dictionary 186 (6th ed.1990) (emphasis in original). Simply stated, where one is party to a void contract, he is not "bound" by it; it represents no "existing restraint" upon his conduct.
 
 
 84
 This interpretation also is consistent with existing Georgia precedent. In a leading case in Georgia involving the effect of a newly enacted statute's application to pre-existing vested rights, the Supreme Court of Georgia held:
 
 
 85
 While the recent act of the General Assembly ... amending Code, Sec. 3-108, was apparently enacted to permit a beneficiary under a contract between other parties to recover, yet it could be given no effect in this case. To do so, would violate the provisions of the United States Constitution ... and the State Constitution ... as to impairing the obligations of contracts. It would be creating a right for one to recover under an existing contract where he previously had no such right; and at the same time subject a party to an existing contract to liability to a third person who previously had no right under the contract. A vested ground of defense is protected from being destroyed by an act of the legislature.
 
 
 86
 Guest v. Stone, 206 Ga. 239, 243, 56 S.E.2d 247, 250 (1949), (involving the application of a new statute dealing with survivor rights in bank accounts to a pre-existing account). In Hall v. Synalloy Corp., 540 F.Supp. 263, 271 (S.D.Ga.1982), Judge Anthony A. Alaimo, after affirming that the relationship between an employer and employee under the Workers' Compensation Act is contractual in nature, found:
 
 
 87
 Thus, a Georgia Workers' Compensation law that takes effect after an employment relationship is terminated should not be applied to determine the liability of a party to that relationship since such would constitute an impermissible retrospective application of the law. Accordingly, in the case at bar, [the new statute] does not apply to those plaintiffs who ceased working for [the employer] prior to [the effective date of the new statute]. It also follows that [the new statute] does have an effect on the litigation between [the employer] and those plaintiffs who continued working for it after [the effective date of the new statute]. These latter plaintiffs are held to have embraced that law as part of their contractual relationship with [the employer] and, thus, have waived any "vested rights" they may have acquired before that time.
 
 
 88
 These decisions are representative of other decisions examining this issue. See Cox v. Schweiker, 684 F.2d 310, 318 (5th Cir. Unit B 1982); Enger v. Erwin, 245 Ga. 753, 267 S.E.2d 25 (1980); Bullard v. Holman, 184 Ga. 788, 792, 193 S.E. 586, 588 (1937); Spengler v. Employers Commercial Union Ins. Co., 131 Ga.App. 443, 206 S.E.2d 693 (1974).
 
 
 89
 After a strained analysis of the Georgia law relating to retroactivity, the majority concludes that the Amendments are "procedural" and are thus "to be deemed retroactive absent a showing of a contrary legislative intent." Majority opinion at p. 1446. The reasoning of Judge Stark set out above in Shah, supra, finding the Amendments "substantive" is more persuasive and is bolstered by the discussions in Guest and Hall. As demonstrated above, the language used in the Amendments section governing retroactive reformulation of contracts clearly indicates the legislative intent with regard to the type of contracts which may be reformulated; that is, those in which employees are "bound " by "existing restraints." The majority relies upon the language of the second "section 2" appearing at the close of the Amendments which announces that the Act shall apply to all remedies sought or granted after the effective date of the law (July 1, 1990). However, this analysis begs the question. Without an existing antecedent right (that is, a contract by which the employee is bound), the employer has no correlative remedy to enforce.
 
 
 90
 Finally, the majority suggests that a reading of the Amendments in their entirety, against the historical backdrop of "traditional[ ] hostil[ity]" towards covenants restricting competition, leads to the conclusion that "the legislature intended to save the covenants that would previously have been unenforceable." Majority opinion at 1447. However, that traditional hostility to the use of anticompetitive covenants for their in terrorem effect argues eloquently against the majority's conclusion. See Howard Schultz & Assocs. of the Southeast, Inc. v. Broniec, 239 Ga. 181, 186, 236 S.E.2d 265, 269 (1977). The covenant existing in Ferrero's contract, as conceded by the majority, was just such a provision.[1] It is doubtful that the legislature sought to reward such inequitable conduct by allowing such covenants to be enforced without the employee first being permitted to extricate himself from the "suffocating effect"[2] of such an agreement, as clearly contemplated by O.C.G.A. Sec. 1-3-5.
 
 
 91
 Furthermore, in light of existing precedent it is unlikely that the Georgia Supreme Court will accept the Amendments "blue pencil" provision which was utilized by the district court in its construction of the reformulated restrictive covenant in Ferrero's contract. In Rita, the Georgia high court adopted the policy of not editing a covenant not to compete so as to make it lawful. Rather, that court declared such a covenant unenforceable in its entirety. The Georgia Supreme Court was asked in Howard Schultz & Assocs. to re-examine three pre-Rita cases that arguably had applied the blue pencil theory and to overrule Rita. Georgia's highest court refused and reaffirmed the Rita decision, admonishing:
 
 
 92
 It is these very requests which are the reason for rejecting severability of employee covenants not to compete. Employers covenant for more than is necessary, hope their employees will thereby be deterred from competing, and rely on the courts to rewrite the agreements so as to make them enforceable if their employees do compete. When courts adopt severability of covenants not to compete, employee competition will be deterred even more than it is at present by these overly broad covenants against competition. We choose to reaffirm Rita Personnel Services v. Kot, supra.
 
 
 93
 Howard Schultz & Assocs., 239 Ga. at 186, 236 S.E.2d at 269.
 
 
 94
 A retreat from its current position on this issue by the Georgia Supreme Court is doubtful. The Georgia legislature's attempt at redefining public policy in light of existing precedent and the express provisions of the Georgia Constitution is unlikely to be embraced by the Georgia Supreme Court with the ardor anticipated by the majority. Article III, section VI, paragraph V(c) of the Constitution of Georgia declares, "The General Assembly shall not have the power to authorize any contract or agreement which may have the effect of or which is intended to have the effect of defeating or lessening competition...." Accordingly, it may be anticipated that the Georgia Supreme Court would rule that the body of existing decisions have extended the law of competitive restraint to its constitutional limits and invalidate the legislature's recent foray outside its boundary of permissible constitutional action.
 
 
 95
 Under any of the foregoing analyses of the law, Associated Materials is unable to demonstrate a likelihood of success on the merits in this case. Accordingly, I would reverse the decision of the district court.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 In Bonner v. Prichard, 661 F.2d 1206 (11th Cir.1981), this Court adopted as binding precedent all Fifth Circuit cases decided before October 1, 1981
 
 
 [2]
 The reformation was narrower than the original covenant, thus complying with section 13-8-2.1(f)(3)
 
 
 [3]
 Ferrero would also like this Court to review the summary judgment entered against him in the district court. Since we affirmed the granting of the preliminary injunction, we do not need to reach this question
 
 
 [1]
 The agreement between Ferrero and Associated Materials is two pages in length and consists of one unnumbered paragraph and three numbered paragraphs. The terms of the agreement focus exclusively on what Ferrero was prohibited from doing. Ferrero secured no specific term of employment under the contract, pursuant to which he was essentially an employee at will. The agreement does not even address Ferrero's compensation. Basically the contract consists entirely of a restrictive covenant
 
 
 [2]
 Hart v. Jackson & Coker, Inc., supra at 1450