[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16422

_____

D. C. Docket No. 02-00189-CV-2

TED WHITTEN,
United States of America, ex rel,

Plaintiff-Appellant,

versus

TRIAD HOSPITAL, INC., as
Successor to Quorum Health Group, Inc.,
QUORUM HEALTH RESOURCES, INC.,
QUORUM HEALTH RESOURCES, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(December 13, 2006)**

Before BIRCH  and BLACK, Circuit Judges, and PRESNELL,[*] District Judge.

_____

[*]Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

PRESNELL, District Judge:

Appellant Ted R. Whitten ("Whitten") brought this action under the *qui tam* provision of the False Claims Act ("FCA"). *See* 31 U.S.C. § 3730(b). Whitten appeals the district court's grant of summary judgment in favor of defendant/appellee, Triad Hospitals, Inc.[1] Specifically, Whitten contends the district court erred when it held that this action is barred by the provisions of a release (the "Release") signed by Whitten and his former employer. In the alternative, Whitten argues that even if Quorum is protected by the Release, such a release would be void as against public policy. This Court finds that the district court erred in its interpretation of the Release and, therefore, we reverse.

## I. Background

Between 1980 and 2001, Whitten was employed by the Glynn Brunswick Memorial Hospital Authority (the "Authority") in a number of positions, including compliance officer. The Authority owns and operates two hospitals in southeast Georgia.[2]

In 1989, Quorum, began providing the Authority with management services.

---

[1]Quorum Health Resources, Inc., a hospital management company, was reorganized into a limited liability company in 1998 and renamed Quorum Health Resources, LLC. On April 27, 2001, Quorum Health Group, LLC, and its subsidiaries, merged with Triad Hospitals, Inc. Collectively, these entities will be referred to hereinafter as "Quorum".

[2]Southeast Georgia Regional Medical Center, located in Brunswick, Georgia, and Camden Medical Center, located in St. Mary's, Georgia.

Quorum supplied the Authority with a Chief Executive Officer and Chief Financial Officer to manage the hospitals' day-to-day operations. Whitten's complaint alleges that Quorum, through its officers, is responsible for the presentation of false claims for payment to the United States government under the Medicare, CHAMPUS, and Tricare programs.[3]

On September 29, 2000, the Authority terminated its relationship with Quorum. A few months later, Whitten left the Authority's employ. On January 3, 2001, Whitten and the Authority entered into a severance agreement, which contained the Release.

Whitten subsequently initiated this *qui tam* action against Quorum under the FCA.

The United States investigated Whitten's claims but ultimately declined to intervene in the suit. However, Whitten chose to proceed with the action on behalf of the United States, in accordance with the provisions of the FCA. *See* 31 U.S.C § 3730(c)(3). Quorum filed a Motion to Dismiss, which the district court decided to treat as a Motion for Summary Judgment, allowing the parties to present additional evidence. Quorum asserted three arguments in support of its motion. However, the district court only reached the first issue and granted summary judgment for

---

[3]CHAMPUS is the Civilian Health and Medical Program of the Uniformed Services, a benefit program for retired armed forces personnel and dependents of active and retired military personnel. Tricare is a managed health care program that supplements CHAMPUS. *See United States v. Whiteside*, 285 F.3d 1345, 1346 (11th Cir. 2002).

Quorum on the ground that this suit was barred by the Release.[4]

## II. Standard of Review

We review de novo the grant of a motion for summary judgment. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1262 (11th Cir. 2004). Federal Rule of Civil Procedure 56(c) requires summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." In deciding a summary judgment motion, the court must view all the evidence in the light most favorable to the nonmoving party, and resolve all disputes and draw all inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999).

## III. Analysis

The first issue before this Court is whether the Release applies to Quorum. Therefore, the Court must interpret the Release using principles of contract law. *Weingart v. Allen & O'Hara,* 654 F.2d 1096, 1103 (5th Cir. 1981). It is unclear, however, whether federal or state law should be used to guide the contract

---

[4]The district court further found that such an agreement was enforceable and did not violate public policy, at least in cases in which the government declines to intervene in the action.

4

interpretation in this case.[5]  It seems more appropriate to apply state law to determine whether a particular party or claim is released by a contract that purports to release all claims (as opposed to only federal claims) because such general issues of construction have no specific impact on federal rights or interests. However, because the contract interpretation principles applied under Georgia law and federal law are virtually the same, the outcome of this case will be unaffected by the choice of law.  Therefore, the Court assumes without deciding that, because the contract was signed in Georgia, Georgia law applies to determine the scope of the Release. *See American Family Life Assurance Co. v. United States Fire Company*, 885 F.2d 826 (11th Cir. 1989).

Under Georgia contract law,

the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of

---

[5]It is clear that, in diversity cases, state law should control the interpretation of a contract. *See, e.g., Ferrero v. Associated Materials, Inc.,* 923 F.2d 1441, 1444 (1991).  Conversely, federal common law principles should be used to interpret a contract involving federal rights or interests. *See, e.g., Clearfield Trust Co. V. United States,* 318 U.S. 363 (1943).  However, neither of these well-established principles guide this particular case, as this case comes before the federal courts under Federal Question jurisdiction, and the contract is not one involving federal rights and interests such as that in *Clearfield Trust.*  In this case, the Release was executed by private parties concerning private causes of action, and it is merely being interpreted now by a federal court to determine which parties the contract protects.  The mere fact that one of the claims sought to be released arises under Federal law does not make this contract analogous to the contract in *Clearfield Trust*.

construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in O.C.G.A. § 13-2-2.

*Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (Ga. Ct. App. 2003) (internal citations omitted). O.C.G.A. § 13-2-2(4) instructs courts, *inter alia*, to look at the whole contract to instruct the interpretation of any part of it, thereby giving meaningful effect to as much of the contract as possible. Furthermore, "a limited or specific provision will prevail over one that is more broadly inclusive." *Griffin v. Barrett*, 155 Ga. App. 509, 510 (Ga. Ct. App. 1980).

This Court, finding that the language of the Release is ambiguous and thus interpreting the contract to resolve that ambiguity, concludes that the language of the Release does not prevent Whitten from bringing this action against Quorum.

The district court held that Quorum was protected by the first paragraph of the Release which states that Whitten

> hereby forever and finally releases and discharges Glynn-Brunswick Memorial Hospital Authority, its officers, *agents*, trustees, servants and employees ("Releasees") and the heirs, executors, administrators, successors and assigns or (sic) any of them, of and from any and all claims, demands, actions and causes of action of any kind, known or unknown, arising or existing until the date of the instrument. (emphasis added).

(R7 at Ex. 2, Para 1). The district court reasoned that this paragraph released Quorum from any actions Whitten might have against it because, even though

6

Quorum was not an agent of the Authority at the time the contract was signed, it had been an agent at the time of the alleged fraud. However, this Court finds that the reach of this general paragraph is limited by other specific language in the Release.

For example, twice within the contract Quorum is referred to specifically, as distinct from the Releasees.

> In the event the undersigned pursues any claim against Quorum Health Resources, LLC or any of its affiliates or successors and in the event Glynn-Brunswick Memorial Hospital Authority or Kings Bay Community Hospital, Inc. is caused to be held liable for such claims because of legal or contractual indemnity, then the undersigned agrees to hold Releasees harmless from any such claim.

(R7 at Ex. 2, Para. 3).

> The parties hereto acknowledge and agree that Ted R. Whitten is contemplating initiating an action for damages or other claim or claims against Quorum Health Resources, LLC, or its proper affiliate, regarding matters arising out of his employment by Releasees and nothing herein is intended to or shall be construed to release Quorum, et al, from any such claims or liabilities.

(R7 at Ex. 2, Para 5). Since Quorum is clearly referred to as a separate entity from the Releasees, the plain language of these two paragraphs indicates that Quorum is not intended to be one of the Releasees. Also, the language from the third paragraph quoted above implies that if Whitten sues Quorum and there is *no* liability through indemnification for the Authority, Whitten has no obligation. The only sensible reading of this paragraph is that Quorum is not one of the Releasees,

7

otherwise indemnification would be irrelevant. Additionally, the fifth paragraph quoted above refers to Whitten's employment by the Releasees and it is undisputed that Whitten was never employed by Quorum.

Finally, the language in the fifth paragraph preserves a claim against Quorum "arising out of [Whitten's] employment" by the Releasees. Quorum argues that this paragraph preserves only claims involving typical employment law issues, such as discrimination. However, other language contained in the third paragraph of the Release suggests that this FCA claim was in fact contemplated by the parties at the time, and there is no indication that Whitten was contemplating any other type of suit.[6]

Simply because the drafters characterized the contemplated suit as "arising from his employment" does not mean that Whitten is limited to suits involving employment law issues.[7] Whitten worked as a compliance officer, and his knowledge of Triad's alleged fraud came to him by way of his employment. It is

---

[6]The second sentence in the third paragraph of the Release reads:

> The undersigned agrees not to file any complaint against Glynn-Brunswick Memorial Hospital Authority, trading as Southeast Georgia Regional Medical Center, or Kings Bay Community Hospital Inc., trading as Southeast Georgia Regional Medical Center, relating to any alleged improper billing practices or any other Federal or State violation of any law or regulation nor to give such information to any other person.

(R7 at Ex. 2, Para 2). This covenant not to sue runs only to the Authority, not the Releasees. Had the parties intended to include Triad, they would have done so.

[7]Indeed, employment law claims are rarely brought against a non-employer.

easy to see how this suit can be characterized as arising from Whitten's employment, despite the fact that it does not involve traditional employment law claims. Therefore, even if Quorum was intended to be included as a Releasee, the Court finds that the fifth and final paragraph of the Release preserved Whitten's *qui tam* claim against it.

## IV. Conclusion

This Court finds that the Release, taken as a whole, does not prevent Whitten from bringing a *qui tam* action against Quorum. However, Quorum sought summary judgment in the district court on the basis of three arguments, only one of which was actually reached by the district court. Therefore, this case will be remanded so that the district court may address Quorum's other two arguments.

REVERSED and REMANDED.