[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-14857
Non-Argument Calendar

————————————————

D.C. Docket No. 9:12-cv-80361-KLR

ARTHUR J. GALLAGHER SERVICE CO.,
RISK PLACEMENT SERVICES, INC.,

Plaintiffs-Counter Defendants-
Appellees,

versus

THOMAS EGAN,

Defendant-Counter Claimant-
Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(March 25, 2013)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Thomas Egan appeals a preliminary injunction entered against him and in favor of Arthur J. Gallagher Service Company and Risk Placement Services, Inc., to enforce nondisclosure and noncompetition covenants in an employment agreement. Egan argues that Gallagher Service and Risk Placement Services lack standing to enforce the covenant not to compete and first breached the employment agreement and that the district court abused its discretion in entering the preliminary injunction. We affirm.

## I. BACKGROUND

Gallagher Service and Risk Placement Services are wholly owned subsidiaries of Arthur J. Gallagher & Company ("Gallagher"). Gallagher is an insurance brokerage company that sells property and casualty insurance and administers employee benefits programs. Gallagher conducted its wholesale insurance operations through Risk Placement Services and its human resource operations through Gallagher Service.

Glenn Yanoff, an area president of Risk Placement Services, offered Egan a position as an Assistant Vice President to sell and service accounts for the "RPS organization." In a letter containing "an outline of an offer of employment," Yanoff proposed that Egan receive an annual salary of $265,000 and incentive payments based on the net revenues derived from his sales. The written offer was

2

"subject to" a "Signed copy of AJGCo. Code of Ethics" and a standard probationary period.

Egan signed the letter and an Executive Agreement with "ARTHUR J. GALLAGHER & CO. ('Corporation'), its subsidiaries, divisions and affiliated and related companies (hereafter collectively referred to as the 'Company')" that was executed by the Vice President of Gallagher.  The agreement contained the terms of employment, fiduciary obligations, post-employment obligations, and remedies for enforcement of those obligations.  Paragraphs one and two of the agreement provided that Egan was an employee of the Company and would receive a salary and other benefits with the "underst[anding] and agree[ment] that the Company may from time to time modify the specific terms and conditions of these entitlements."  In paragraph 14, Egan "recognize[d] the Company's legitimate interest in protecting . . . those Company accounts with which [he] [would] be associated during his employment" and "agree[d] that for a period of two (2) years following the termination of his employment for any reason whatsoever," he would not solicit for insurance services or provide group insurance or benefit services for "any existing Company account or any actively solicited prospective account of the Company for which he performed any of the [specified] functions during the two-year period immediately preceding [his] termination."  And paragraph 14 provided

3

that "[t]he term Company account . . . shall be construed as Insured's written via Risk Placement Services, Inc."  In paragraph 17, Egan "recognize[d]" that his "rights and privileges, . . . his services and his corresponding covenants to the Company, are of a special, unique and extraordinary character, the loss of which cannot reasonably or adequately be compensated for in damages," and he "underst[ood] and agree[d] that the Company [would] be entitled to equitable relief, including a temporary restraining order and preliminary and permanent injunctive relief, to prevent a breach of [the] Agreement."  Paragraph 21 provided that the "Agreement supersede[d] all existing Company policies, and all previous agreements between the parties, to the extent that such policies and agreements consider[ed] subject matters herein addressed," and paragraph 22 stated that the "Agreement . . . may be enforced by any subsidiary of the Company for whom [Egan] has provided services hereunder."

Egan worked for Gallagher more than four years before he resigned and accepted employment with a competitor, Genesee Special Brokerage.  Egan left Gallagher a few months after it reduced his salary and changed his incentive plan. After Egan changed employers, Gallagher learned that Egan was soliciting his former customers on behalf of Genesee.

4

Gallagher Service and Risk Placement Services filed a complaint for damages and to enjoin Egan from "violating the terms of the Agreement." The companies alleged that Egan had misappropriated confidential information and induced existing customers of Risk Placement Services to move their accounts to Genesee. Egan filed a counterclaim for breach of contract and to recover unpaid wages. Egan alleged that the reduction of his salary and incentive plan invalidated the agreement and that he was not bound by its covenants.

The companies moved for a preliminary injunction. During a hearing on the motion, Egan testified that the President of Risk Placement Services, John Head, had promised never to reduce Egan's salary, but Head testified that he had never made such a promise. In addition, Egan argued that he had developed a "mature" clientele before accepting employment with Gallagher that it now sought to appropriate. The companies responded that Gallagher had purchased a customer list from Egan's former employer and paid that company $140,000 to release Egan from a noncompetition agreement and that Egan had developed "a large part of" his clientele while employed by Gallagher.

The district court preliminarily enjoined Egan from violating his nondisclosure and noncompetition covenants. The district court concluded that the covenants were reasonable and formulated to protect legitimate business interests

5

of Gallagher. The district court also concluded that the companies were likely to prevail on their complaint about a breach of contract and that Egan was unlikely to prevail on his counterclaim about an antecedent breach by Gallagher. The district court discredited Egan's testimony and found "there [was] no credible evidence to show that [Egan] was guaranteed to receive the compensation set forth in the employment offer for the duration of his employment" when the agreement "indicate[d] that [Gallagher] [was] entitled to modify [Egan's] compensation at their discretion." In the alternative, the district court ruled that, even had it credited Egan's testimony, he failed to "properly ple[ad] an oral modification of his written employment contract." The district court also concluded that the factors of irreparable harm, balance of harms, and interest of the public weighed in favor of issuing a preliminary injunction.

## II. STANDARDS OF REVIEW

This appeal requires that we apply three standards of review. "We review standing determinations de novo." Interface Kanner, LLC v. JPMorgan Chase Bank, N.A., 704 F.3d 927, 931 (11th Cir. 2013). After the district court issues a preliminary injunction, we review de novo its legal conclusions, its findings of fact for clear error, and its balancing of the factors for abuse of discretion. Mesa Air Group, Inc. v. Delta Air Lines, Inc., 573 F.3d 1124, 1128 (11th Cir. 2009). To

6

obtain temporary injunctive relief, the complainant must have proved that he would suffer irreparable harm without the injunction and an adequate remedy at law was unavailable; there existed a substantial likelihood that he would succeed on the merits; the threatened injury outweighed any possible harm to the respondent; and a temporary injunction would serve the public interest. Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1448 (11th Cir. 1991).

### III. DISCUSSION

Egan challenges the preliminary injunction entered in favor of Gallagher Service and Risk Placement Services. Egan argues that the companies lack standing to enforce the nondisclosure and noncompetition covenants because they were not parties to the agreement or identified as third-party beneficiaries of the agreement. Egan also argues that he can prevail on his counterclaim about an antecedent breach of the agreement; the companies will not suffer irreparable harm in the absence of a preliminary injunction; and the balancing of harms weigh in his favor. We address these arguments in turn.

The district court did not err in its determination that the companies had standing to enforce the covenants. When "[t]he language employed in [an] agreement is clear and unambiguous[,]" its "parties are bound by the contractual language." Envtl. Servs., Inc. v. Carter, 9 So. 3d 1258, 1264 (Fla. Dist. Ct. App.

7

2009). The plain language of the agreement provided that the covenants extended to "Arthur J. Gallagher & Co. . . [and] its subsidiaries," and Egan admits that "RPS and AJG Service are each wholly-owned subsidiaries of AJG." See Gory Associated Indus., Inc. v. Griffin, 397 So. 2d 1054, 1055–56 (Fla. Dist. Ct. App. 1981) (covenant not to compete in employment contract between employer "and its affiliates" enforceable by wholly-owned subsidiary of employer when subsidiary met the contractual definition of affiliate and employee did not deny affiliate status); see also Churchville v. GACS Inc., 973 So. 2d 1212, 1215–16 (Fla. Dist. Ct. App. 2008) (release in worker's compensation settlement agreement covered employer's sister company when agreement executed between the employer "and its affiliates"). Because Gallagher Service and Risk Placement Services are parties to the agreement, we need not address Egan's argument that the companies do not qualify as third-party beneficiaries of the agreement.

The district court did not abuse its discretion when it determined that Gallagher Service and Risk Placement Services were likely to prevail on the merits on their complaint of breach of contract. The companies established that Egan had violated the restrictive covenants and that they would likely prevail against Egan's proffered defense that Gallagher first breached the contract. See Supinski v. Omni Healthcare, P.A., 853 So. 2d 526, 532 (Fla. Dist. Ct. App. 2003). The district court

8

had to "read and construe [the offer and the agreement] together," to evaluate the merits of Egan's defense, <u>Murphy v. Chitty</u>, 739 So. 2d 697, 698 (Fla. Dist. Ct. App. 1999) (internal quotation marks omitted), and reasonably concluded that the companies would likely succeed on the merits. Egan contends that the written offer created a specific "promise to pay [him] a salary of $265,000 per year . . . without qualification or benchmarks" that superseded a general right of modification reserved in the agreement, but his argument cannot be squared with the agreement. Although the offer stated that Egan would receive a "$265,000 annual salary paid on the 15th and last day of the month," paragraph two of the agreement allowed "the Company . . . from time to time modify the specific terms and conditions" of his "semi-annual monthly payment of compensation." And paragraph 21 provided that "the Agreement supersede[d] . . . all previous agreements between the parties[] to the extent . . . [they] consider[ed] subject matters herein addressed." We cannot say that the district court abused its discretion in determining that Egan was unlikely to prevail on his defense that he was relieved of his obligations under the restrictive covenants because Gallagher Service breached the contract.

The district court also did not abuse its discretion when it determined that the factors of irreparable harm and balance of harms weighed in favor of issuing a

9

preliminary injunction.  Gallagher Service and Risk Placement Services established that they would suffer irreparable harm without an injunction.  "An injury is 'irreparable' only if it cannot be undone through monetary remedies." Ferrero, 923 F.2d at 1449 (quoting Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983)).  The district court found that, if Egan continued to solicit his former clients, the companies stood to lose accounts in which they had invested significant resources, revenues from the renewal of those accounts, and goodwill cultivated with those clients.  The loss of longstanding clients and goodwill is an irreparable injury.  See id.  And Egan failed to establish that the harm he suffered outweighed that faced by the companies.  Although Egan lost the ability for two years to solicit clients with whom the companies had an ongoing relationship, he retained the ability to compete with the companies for new accounts.  These factors favored preliminarily enjoining Egan from violating the restrictive covenants.

We **AFFIRM** the preliminary injunction against Egan.